1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

SCOTT KINGSTON,

　　　　　　　　　Plaintiff,

　　　v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,

　　　　　　　　　Defendant.

CASE NO. C19-1488 MJP

ORDER ON MOTION FOR
PARTIAL DISMISSAL

16

17

18

19

20

21

22

23

24

The above-entitled Court, having received and reviewed:

1.　Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 24),

2.　Plaintiff's Response to Defendant's Partial Motion to Dismiss Plaintiff's Amended

　　Complaint (Dkt. No. 25),

3.　Defendant's Reply in Support of Partial Motion to Dismiss Plaintiff's Amended

　　Complaint (Dkt. No. 26),

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

1    IT IS ORDERED that the motion is PARTIALLY GRANTED and PARTIALLY

2    DENIED; Counts 2 – 5 (breach of express unilateral contract, breach of implied-in-fact contract,

3    unpaid wages on termination, and failure to pay wages) will be DISMISSED with prejudice.

4    Count 6, Plaintiff's claim for unjust enrichment, will be permitted to go forward.

5                                  **Background[1]**

6    Plaintiff was a sales manager for Defendant International Business Machines Corporation

7    ("IBM") whose wages consisted of a combination of base salary and commissions.  (FAC, ¶¶ 1,

8    7, 12)  In April of 2018, Plaintiff alleges that he was terminated for complaining about the

9    discriminatory treatment (an inequitable application of the company's commission policy) of an

10   African-American sales representative.  (Id., ¶¶ 42-29, 55).  He further alleges that, at the time he

11   was terminated, he was owed $124,425 in commissions generated by sales during the first

12   quarter of 2018.  Id., ¶¶ 58-60, 72-90).  According his complaint, Plaintiff was paid no

13   commissions for the final quarter of his employment at IBM.  Id., ¶ 61.

14   Plaintiff has filed a lawsuit against his former employer, alleging causes of action for

15   retaliation, breach of express unilateral contract, breach of implied-in-fact contract, unpaid wages

16   on termination, failure to pay wages, unjust enrichment, wrongful termination, and wage

17   discrimination.  Defendant does not, at this time, challenge Plaintiff's claims for retaliation,

18   wrongful termination, and wage discrimination, but seeks dismissal of all his other causes of

19   action.

20                                 **Standard of Review**

21   Defendant brings its motion under FRCP 12(b)(6).  Under FRCP 12(b)(6), the Court may

22   dismiss a complaint for "failure to state a claim upon which relief can be granted."  In ruling on a

23   _____

24   [1] All factual allegations derived from Plaintiff's First Amended Complaint (Dkt. No. 20; "FAC").

1 motion to dismiss, the Court must construe the complaint in the light most favorable to the non-

2 moving party.  Livid Holdings, Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir.

3 2005).  The Court must accept all well-pleaded allegations of material fact as true and draw all

4 reasonable inferences in favor the plaintiff.  Wyler summit Partnership v. Turner Broad. Sys.,

5 135 F.3d 658, 661 (9th Cir. 1998).

6 Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim

7 to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)/

8 A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to

9 draw the reasonable inference that the defendant is liable for the misconduct alleged."  Aschcroft

10 v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  As a result, a complaint must contain "more than labels

11 and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

12 Twombly, 550 U.S. at 555.

**Discussion**

14 During the time period at issue in this litigation – the first quarter of 2018 –  Plaintiff was

15 operating under a written commission plan called an Incentive Plan Letter ("IPL"; Dkt. No. 24,

16 Ex. 1).  Plaintiff alleges the existence of the IPL in his complaint (FAC, ¶¶ 73-75); Defendant

17 cites case authority for the Court's right to consider documents referenced in the complaint in

18 ruling on a motion to dismiss.  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 194) *overruled on*

19 *other grounds*, 307 F.3d 1119 (9th Cir. 2002).

20 Defendant cites several provisions of the IPL which it contends defeat the causes of

21 action it attacks in this motion.  The first provision concerns the "Right to Modify or Cancel:"

22 **Right to Modify or Cancel:** IBM reserves the right to adjust the Plan terms,
23 including, but not limited to, changes to sales performance objectives,
assigned territories or account opportunities, applicable incentive payment
24 rates or similar earnings opportunities, or to modify or cancel the Plan, for

ORDER ON MOTION FOR PARTIAL DISMISSAL - 3

1    any individual or group of individuals, including withdrawing an offered or
2    accepted Incentive Plan Letter.

3    Dkt. No. 24-1 at 2.

4         The second provision cited relates to "Review of a Specific Transaction:"

5    **Review of a Specific Transaction:** If a specific customer transaction has a
     disproportionate effect on an incentive payment when compared with the
6    opportunity anticipated during account planning and used for the setting of
     sales objectives, or is disproportionate compared with your performance
7    contribution towards the transaction, IBM reserves the right to review and,
     in its sole discretion, adjust the incentive achievement and/or related
8    payments.

9    Id.

10        A third provision of the IPL covered Defendant's right to change its incentive payment

11   calculations in the event of an error:

12   **Adjustment for Errors:** IBM reserves the right to review and, in its sole
     discretion, adjust or require repayment of incorrect incentive payments
13   resulting from incomplete incentives processes or other errors in the
     measurement of achievement or the calculation of payments, including
14   errors in the creation or communication of sales objectives. Depending on
     when an error is identified, corrections may be made before or after the
15   last day of the full-Plan period, and before or after the affected payment
     has been released.
16

17   Id. at 3.

18        Finally, Defendant quotes the "Earnings" clause from the document:

19   **Earnings:** Incentive payments you may receive for Plan-to-Date
     achievement are a form of advance payment based on incomplete business
20   results. Your incentive payments are earned under the Plan terms, and
     are no longer considered Plan-to-Date advance payments, only after the
21   measurement of complete business results following the end of the full-
     Plan period. (Or, if applicable, after the date you left the Incentive Plan
22   early.) Incentive payments will be considered earned only if you have met
     all payment requirements, including: (1) you have complied with the
23

24

1
2
3

Incentive Plan; (2) you have not engaged in any fraud, misrepresentation
or other inappropriate conduct relating to any of your business transactions
or incentives; and (3) the customer has paid the billing for the sales or
services transaction related to your incentive achievement.

4   Id.

5   The IPL indicates that, in accepting the arrangement, Plaintiff had read and understood

6   the terms of the document.   The Court concludes that Counts 2 - 5 rise or fall on whether these

7   provisions permitted Defendant, at its discretion, not simply to reduce Plaintiff's rate of

8   compensation on his commissions, but to pay him nothing.  If that question is answered in the

9   affirmative, then that authority becomes an term of the contract and Defendant was simply

10  performing under its agreed-upon authority (or, conversely, there was no meeting of the minds

11  and no contract at all); similarly, Plaintiff's "wages" (what he was statutorily entitled to by way

12  of compensation) must be assessed in that light.  If the answer is that the law did not permit

13  Defendant to exercise its discretion in that fashion, Plaintiff has plead valid claims under

14  Washington statutory legislation; conversely, if IBM was within its contractual rights to

15  determine Plaintiff was entitled to no commissions for the time period at issue, the state statutes

16  do not afford Plaintiff a remedy.

17  Defendant cites a plethora of legal opinions from various districts and circuits (fourteen,

18  to be exact) upholding similar terms in other IPLs subjected to similar legal claims.  There is

19  some variation in the terms of the IPLs (e.g., some of them explicitly state "this is not a

20  contract," and/or "we make no promise to make distributions"), but all of them contain language

21  asserting that IBM maintains the authority, up until the moment the commission is finally

22  determined, to "modify or cancel" the commission agreement.  And, in many cases in many

23  jurisdictions, courts have found that those terms are clear and give IBM the right to pay only a

24  portion of commissions generated, or none at all, with impunity.

1    Plaintiff's attempt to repudiate Defendant's legal theory and its authority – particularly as

2    regards the critical element of "mutual assent" – is unpersuasive.  First, he asserts:

3         To the extent that Mr. Kingston is required to plead facts evidencing
          mutual assent, he has done so.  He alleges that IBM sent him the incentive
4         plan letter and promised to pay commissions *in accordance with the plan*
          and that Mr. Kingston accepted the offer by performing work for IBM.
5         Dkt. No. 20 ¶¶ 73-76.

6

7    Dkt. No. 25, Response at 12 (emphasis supplied).  Plaintiff only succeeds in making Defendant's

     point – IBM promised to pay "in accordance with [a] plan" which gave the company the
8
     authority to both recalculate the commission or decline to offer any commission at all.
9
          Second, Plaintiff asserts that Defendant's cases are inapposite because "[m]ost were
10
     decided in the context of summary judgment or trial" (naming two out of the 14 cases cited by
11
     Defendant).  Id. at 13.  It is equally unpersuasive. Eight of Defendant's fourteen cases are based
12
     on motions to dismiss or for judgment on the pleadings; even those which are not FRCP 12(b)
13
     motions remain purely legal calls in which the facts (basically, the wording of the IPLs) are
14
     undisputed and no extraneous circumstances (e.g., oral amendments) are cited.
15
          Tellingly, Plaintiff cites only a single case to the contrary (Redman v. Nevada Bell
16
     Telephone Co., No. 3-05-CV-0094-ECR-VPA, 2006 WL 8442502 at *7 (D. Nev. June 16,
17
     2006))( "although the Plan's language explicitly retains [Defendant]'s right to 'amend, change,
18
     or cancel' the incentive plan 'solely at its discretion,' that language does not explicitly identify
19
     *retroactive* changes;" emphasis in original).  It is over 13 years old, a District Court opinion (i.e,
20
     persuasive authority at best), and has never been cited anywhere else since.  The Court considers
21
     the opinion an "outlier."
22

23

24

1    *Breach of unilateral contract/Breach of contract implied-in-fact* (Claims No. 2 and 3)

2         The parties agree that a unilateral contract consists of an offeror's promise to do

3    something in the event the offeree performs a certain act.  Cook v. Johnson, 37 Wn.2d 19, 23

4    (1950); Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc., 169 Wn.App.11, 129 (2012).  The

5    traditional elements of a contract are met by the promise (offer) and the performance

6    (acceptance); unilateral contracts also require the same mutual assent or "meeting of the minds"

7    as other valid contractual arrangements.[2]

8         Likewise, a party attempting to establish a contract implied-in-fact

9         must establish the following elements: (1) the defendant requests the
          plaintiff to perform some service, (2) the plaintiff expects the payment for
10        the service, and (3) the defendant knows or should know the plaintiff
          expects payment for it.
11

12   25 David K. DeWolf et al., Washington Practice: Contract Law & Practice § 1:9 (3d ed. Nov.

13   2019 Update).  This type of contractual agreement, "[l]ike an express contract, '[] grows out of

14   the intentions of the parties to the transaction, and there must be a meeting of the minds.'"

15   Heaton v. Imus, 93 Wn.2d 249, 252 (1980)(*quoting* Milone v. Tucci, Inc. v. Bona Fide Builders,

16   Inc., 49 Wn.2d 363, 368 (1956)).  Just as with an express contract, a plaintiff must "prove each

17

18

---

19   [2]   As with bilateral contracts, unilateral contracts are defined by traditional contract concepts of
     offer, acceptance, and consideration… In addition, as with bilateral contracts, unilateral contracts
     require mutual assent, also known as a meeting of the minds. *Multicare*, 114 Wn.2d at 586-88, 586
20   n.24.
         Regarding mutual assent, we follow the objective manifestation theory of contracts. *Id.* at 586.
21   "[T]he unexpressed subjective intention of the parties is irrelevant; the mutual assent of the parties
     must be gleaned from their outward manifestations. To determine whether a party has manifested
     an intent to enter into a contract, we impute an intention corresponding to the reasonable meaning
22   of a person's words and acts." *Id.* at 587 (citations omitted).

23   Landes v. Cuzdey, No. 51841-4-II, 2019 Wash. App. LEXIS 2218, at *16 (Ct. App. Aug. 20,
     2019).

24

1    essential fact [of the contract], including the existence of a mutual intention." <u>Cahn v. Foster &</u>

2    <u>Marshall, Inc.</u>, 33 Wn.App. 838 (1983).

3         The facts alleged in this complaint, along with the clear terms of the IPL, establish that

4    Plaintiff and Defendant either (1) reached an agreement via the IPL giving Defendant unfettered

5    authority to modify or cancel the agreement up until the determination of the "final business

6    result" or (2) did not have a meeting of the minds about the nature of the commission payment

7    procedure at IBM.  If the answer is (1), there is no breach of any sort of contract created by

8    Defendant doing what it was entitled by the terms of the agreement to do.  If the answer is (2),

9    there is no mutual assent and therefore no contract.  Either way, Plaintiff cannot state a claim

10   sufficient to entitle him to relief on his contractual causes of action.

11        Plaintiff cites Washington contract law for the proposition that, "[w]hen an employer

12   offers to compensate an at-will employee for work performed, the employer may change the

13   terms of compensation *prospectively* if the employee is notified of the changes and continues

14   working."  Response at 13; <u>Duncan v. Alaska USA Fed. Credit Union, Inc.</u>, 148 Wn.App. 52

15   (2008)(emphasis in original).  The problem with this argument is that, in altering the commission

16   agreement after the close of the quarter, Defendant was not "chang[ing] the terms of

17   compensation;" it was exercising its rights under the agreement to modify the terms of

18   compensation or cancel the agreement altogether.

19        Finally, Plaintiff attempts to argue that his performance under the terms of the agreement

20   somehow negates the unilateral control IBM reserved for itself in the IPL.  *See* Response at 17.

21   But the case he cites for that proposition says exactly the opposite of what he intends to establish.

22   <u>SAK & Assocs, Inc. v. Ferguson Constr., Inc.</u>, 189 Wn.App. 405 (2015) involved a construction

23   subcontract where the general contractor inserted a "termination for convenience" provision

24

ORDER ON MOTION FOR PARTIAL DISMISSAL - 8

1  which allowed it to terminate the subcontractor's services at any point for any reason.  When the

2  general contractor exercised the option and terminated the subcontract, the company sued,

3  arguing that the unilateral right to terminate without cause created an "illusory promise" and

4  rendered the contract unenforceable.  The Washington Court of Appeals, in upholding the grant

5  of summary judgment for Defendant, ruled that "[i]t is well recognized that partial performance

6  provides adequate consideration for enforcement of what otherwise might be an illusory

7  provision granting unilateral control to one party."  Id. at 414.  In other words, Plaintiff's partial

8  performance of the subcontract work didn't destroy the "illusory promise," it *established*

9  Defendant's right to invoke the unilateral termination for convenience clause.  Plaintiff's

10  argument has no support in general contract law or Washington state law.

11       The Court finds that Defendant is entitled to a dismissal of the contract causes of action.

12       *Statutory wage claims/RCW 49.48.010 and 49.52.070 (Claims No. 4 and 5)*

13  Washington's Wage Rebate Act provides that an employer who, "[w]illfully and with

14  intent to deprive the employee of any part of his or her wages, shall pay any employee a lower

15  wage than the wage such employer is obligated to pay such employee by any statute, ordinance,

16  or contract" shall be guilty of a misdemeanor (RCW 49.52.050(2)), and "shall be liable in a civil

17  action by the aggrieved employee."  RCW 49.52.070.

18       The operative phrase here, of course, is "the wage such employer *is obligated to pay*."

19  Plaintiff argues that his claims that "he had an explicit or implied contract with IBM" that

20  required the company to pay the commissions, and that Defendant owed him the commissions he

21  seeks through this lawsuit (FAC, ¶¶ 72-90) are sufficient to plead a claim under the Wage Rebate

22  Act.  The Court agrees with Defendant – these are the kind of conclusory allegations prohibited

23  by Iqbal and Twombly.  As discussed above, the language of the IPL unambiguously establishes

24

1 | that Defendant was *not* obligated to pay Plaintiff the commissions he is seeking.  Without such

2 | an obligation, there can be no Wage Rebate Act violation.

3 |     RCW 49.48.010 provides that "[w]hen any employee shall cease to work for an

4 | employer, whether by discharge or by voluntary withdrawal, the wages due him or her on

5 | account of his or her employment shall be paid to him or her at the end of the established pay

6 | period."  The term "wages" has been held to include commissions.  Int'l Assoc. of Fire Fighters,

7 | Local 46 v. City of Everett, 146 Wn.2d 29, 35 (2002).

8 |     The claim is fatally flawed.  The "wages due [Plaintiff]" in the form of commissions at

9 | the end of the established pay period were those he agreed to under the IPL, which included

10 | Defendant's right to cancel the commissions altogether.  He agreed to allow IBM to modify or

11 | cancel the plan under which the commissions were paid – the wages due him (at least as far as

12 | commissions to which he might be entitled) were what IBM determined them to be.

13 |     The Court will grant Defendant's motion to dismiss the Washington statutory claims.

14 | *Unjust enrichment*

15 |     Adequately pleading an unjust enrichment claim requires Plaintiff to assert "a benefit

16 | conferred upon the defendant by the plaintiff," plus "the acceptance or retention by the defendant

17 | of the benefit under such circumstances as to make it inequitable for the defendant to retain the

18 | benefit without the payment of its value."  Young v. Young, 164 Wn.2d 477, 484 (2008).

19 |     The Court is unpersuaded that this cause of action must be dismissed.  Although

20 | Defendant cites a number of cases in support of its position, they are (with one exception) either

21 | distinguishable or poorly reasoned.

22 |   1.  Four of Defendant's cases (Middleton v. IBM, No. 19-11824, 2019 U.S. App. LEXIS

23 |     20967 at *9-10 (11th Cir. Sept. 26, 2019); Snyder v. IBM, No. 1:16-cv-03596-WMR,

24 |

ORDER ON MOTION FOR PARTIAL DISMISSAL - 10

1    2019 U.S. Dist. LEXIS 66583, at *13-16 (N.D. Ga. Mar. 18, 2019); <u>Morris v. IBM</u>, No.

2    1:18-cv-0042-LY, 2018 U.S. dist. LEXIS 222568, at *9-11 (W.D. Tex. Nov. 29, 2018);

3    <u>Fessler v. IBM</u>, No. 1:18-cv-798, 2018 U.S. Dist. LEXIS 202725, AT *13-15 (E.D. Va.

4    Nov. 28, 2018)) are based on either "quantum meruit" or unjust enrichment claims which

5    have as an element a justified "expectation" by plaintiff or defendant that payment was

6    due.  Because of the language of the IPL discussed *supra*, it was easy in those cases to

7    rule that no reasonable expectation existed.  "Expectation" is not an element of the

8    Washington cause of action, thus these cases are inapplicable to Plaintiff's circumstances.

9    2.   A fifth case (<u>Pero v. IBM</u>, N. 12-CV-07484 (KM), 2014 U.S. Dist. 2461 (D.J.J. Jan. 2,

10        2014) is, to put it simply, too poorly reasoned as to stand as persuasive authority.  There,

11        Plaintiff's unjust enrichment claim was dismissed, not on "lack of reasonable

12        expectation" grounds but based on the reasoning that Plaintiff, an IBM sales

13        representative who had generated tens of millions of dollars in revenue for the company,

14        had failed to articulate exactly what benefit he conferred on IBM.  The case has been

15        cited nowhere else for its holding, and (as an opinion from another District Court) is

16        persuasive authority at best.  The Court declines to follow it.

17    3.   Defendant's sixth case (<u>Martignetti v. IBM</u>, No. RDB-18-2431, 2019 U.S. Dist. LEXIS

18        168525 (D. Md. Sept. 30, 2019) is actually on all fours with the instant matter in terms of

19        the elements of the unjust enrichment cause of action and reached a result in alignment

20        with Defendant's position.

21            Plaintiff cannot claim that IBM's acceptance of Martignetti's
             services was "inequitable." As previously indicated, the IPL
22           expressly indicated that the Plan could be modified or canceled at
             any time, and that IBM retained complete discretion concerning
23           the disbursal of payments. Although these terms are highly
             advantageous to IBM, this alone does not render them actionable
24

> under an unjust enrichment theory. Martignetti agreed to make
> sales under these terms; if he found them unacceptable, he was free
> to raise the issue or seek employment elsewhere.

The Court simply disagrees with the rationale expressed in <u>Martignetti</u>.  Merely because

the terms of an agreement are in writing and a party agreed to them does not make them

"equitable" – if that were true, there would be no such thing as a contract of adhesion.

<u>Martignetti</u> is a non-binding District Court decision from another circuit, cites no

authority for its reasoning, and is currently on appeal.  The Court does not find it

persuasive and declines to follow its lead.

Unjust enrichment is an equitable remedy.  The concept of equitable jurisdiction exists to

permit the court to do justice when the letter of the law either does not cover the situation or may

tend to dictate an inequitable result.  Plaintiff has plead sufficient facts upon which a judge could

reasonably find the terms of this IPL inequitable, and the acceptance or retention of the benefit

conferred by Plaintiff upon Defendant without payment of its value equally inequitable.  The

Court is further confirmed in this conclusion by the circumstances under which Plaintiff alleges

he was terminated, allegations which the Court accepts as true for purposes of analyzing this

motion.

The motion to dismiss the unjust enrichment cause of action is DENIED.

## Conclusion

The clear and unambiguous language of the agreement that Plaintiff indicated he read and

understood precludes either the finding of a breach of contract (if there was a meeting of the

minds of the parties) or the finding of a valid contract (if there was not mutual assent regarding

the terms).  This conclusion dictates the dismissal both of Plaintiff's contractual causes of action

and of the state statutory claims premised on the theory that Plaintiff was contractually entitled to

1 │ the commissions which he was denied.  Because there are no set of facts under which Plaintiff

2 │ could plead adequate causes of action under principles of contract law or state wage laws, the

3 │ dismissal will be with prejudice.

4 │       However, Plaintiff has plead sufficient facts under which a reasonable jury could find for

5 │ him on his claim of unjust enrichment, and Defendant's motion to dismiss that claim will not be

6 │ granted.

7 │

8 │       The clerk is ordered to provide copies of this order to all counsel.

9 │       Dated April 15, 2020.

10 │

11 │                                      Marsha J. Pechman
                                        United States Senior District Judge
12 │

13 │

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

ORDER ON MOTION FOR PARTIAL DISMISSAL - 13