HONORABLE MARSHA J. PECHMAN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT KINGSTON,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York Corporation,<br><br>Defendant. | No. 2:19-cv-01488-MJP<br><br>**INTERNATIONAL BUSINESS MACHINES CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**NOTE ON MOTION CALENDAR:**<br>**January 8, 2021** |

Plaintiff Scott Kingston espouses many unsupported theories and much speculation in his Response to IBM's Motion for Summary Judgment ("Response").[1] However, there are several facts Plaintiff does not (and cannot) dispute that are fatal to his claims:

- Plaintiff did not raise any alleged concerns about Mr. Beard's race or commission payments until after the allegations related to the SAS commission payments had already been raised with Internal Audit and after Mr. Larkin initiated the investigation. (Pl. Dep. 63:21-64:13, 127:13-20; Johnson Dep. 29:7-30:1, 141:6-142:2; Larkin Dep. 86:3-15).[2]

---

[1] IBM also notes that Exhibits A-D to the Declaration of Toby Marshall (Dkt. #55-1 to #55-4) contain no evidentiary support for the information contained therein.

[2] The cited portions of Scott Kingston's Deposition ("Pl. Dep.") are attached as Exhibit A to the Reply Declaration of Justin Barnes filed herewith; the cited portions of Karla Johnson's Deposition ("Johnson Dep.") are attached as Exhibit B to the Reply Declaration of Justin Barnes filed herewith; the cited portions of Jeff Larkin's Deposition ("Larkin Dep.") are attached as Exhibit C to the Reply Declaration of Justin Barnes filed herewith.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT - 1
(CASE NO. 2:19-cv-01488-MJP)

Jackson Lewis P.C.
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

- Although SAS was added to Mr. Donato's territory after the deal closed without an increase in quota, and although both Mr. Temidis and Plaintiff were aware of the Specific Transaction provision in Mr. Donato's IPL, both Mr. Temidis and Plaintiff approved Mr. Donato's commissions on the SAS deal and did not raise any concerns with the commissions analyst, thus approving the $1.6 million commission payment to Mr. Donato. (Pl. Dep. 115:15-116:21).
- The individual who raised the allegations against Plaintiff (Karla Johnson), the investigator (Jeff Larkin), and the individual responsible for the recommendations of termination (Linda Kenny) did not know Mr. Beard's race at the time of the SAS investigation and were not aware of any complaints of race discrimination or any unlawful activity raised by Plaintiff. (Johnson Dep. 75:8-19, 194:12-16; Larkin Dep. 61:3-15, 297:11-25; Kenny Dep. 339:19-340:4).[3]
- Likewise, at the time of the decision to terminate Plaintiff's employment, the individuals consulted about Plaintiff's termination (Cindy Alexander, John Teltsch, Lisa Mihalik, Russell Mandel, and Stephen Leonard) did not know Mr. Beard's race nor were they aware of any complaints of discrimination or unlawful conduct raised by Plaintiff. (Alexander Dep. 20:7-17, 299:6-15; Teltsch Dep. 147:20-148:1, 179:24-180:3; Mihalik Dep. 239:7-9, 265:14-17; Mandel Dep. 149:14-16, 167:12-18; Leonard Dep. 191:8-9, 247:7-16).[4]
- Plaintiff alleges he complained about race discrimination to Rose Nunez, Dave Mitchell, and Dorothy Copeland, but none of them shared his alleged concerns with any other IBM

---

[3] The cited portions of Linda Kenny's Deposition ("Kenny Dep.") are attached as Exhibit D to the Reply Declaration of Justin Barnes filed herewith.

[4] The cited portions of Cindy Alexander's Deposition ("Alexander Dep.") are attached as Exhibit E to the Reply Declaration of Justin Barnes filed herewith; the cited portions of John Teltsch's Deposition ("Teltsch Dep.") are attached as Exhibit F to the Reply Declaration of Justin Barnes filed herewith; the cited portions of Lisa Mihalik's Deposition ("Mihalik Dep.") are attached as Exhibit G to the Reply Declaration of Justin Barnes filed herewith; the cited portions of Russell Mandel's Deposition ("Mandel Dep.") are attached as Exhibit H to the Reply Declaration of Justin Barnes filed herewith; the cited portions of Stephen Leonard's Deposition ("Leonard Dep.") are attached as Exhibit I to the Reply Declaration of Justin Barnes filed herewith.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT - 2
(CASE NO. 2:19-cv-01488-MJP)

Jackson Lewis P.C.
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

1 | employees. (Pl. Dep. 63:21-64:13, 69:14-70:17, 71:11-73:5, 80:7-13, 127:13-20; Copeland Dep. 54:8-10; Mitchell Decl., Dkt. #49-11 ¶ 6; Nunez Decl., Dkt. #49-12 ¶ 6).[5]

- The only person involved in the termination who was aware of any concerns raised by Plaintiff was Ms. Copeland, who testified that she was not the decision maker and merely implemented the recommendations. (Copeland Dep. 138:15-139:3, 145:15-19). Indeed, Plaintiff agrees that Ms. Copeland deferred the decision to others and that "her involvement was as close to irrelevant as [Plaintiff] could imagine." (Pl. Dep. 135:2-136:4).

- At the time of Plaintiff's termination, the individual who raised the allegations against Plaintiff (Ms. Johnson), the investigator (Mr. Larkin), the individual responsible for the recommendations of termination (Ms. Kenny), and all individuals involved in the decision to terminate his employment (Ms. Alexander, Mr. Teltsch, Ms. Mihalik, Mr. Mandel, and Mr. Leonard), did not know how old Plaintiff was. (Alexander Dep. 299:20-22; Larkin Dep. 295:16-18; Teltsch Dep. 179-16-18; Johnson Dep. 191:3-6; Kenny Dep. 339:2-7; Mihalik Dep. 265:21-23; Mandel Dep. 175:2-3; Leonard Dep. 246:23-247:1).

- Plaintiff was paid all commissions he was due as of the last day of his employment. (Pl. Dep. 153:22-154:4).

---

[5] The cited portions of Dorothy Copeland's Deposition ("Copeland Dep.") are attached as Exhibit J to the Reply Declaration of Justin Barnes filed herewith. The declaration of Dave Mitchell ("Mitchell Decl.") was attached as Exhibit K to the Declaration of Justin Barnes Dkt. #49-11. The declaration of Rosalva Nunez ("Nunez Decl.") was attached as Exhibit L to the Declaration of Justin Barnes Dkt. #49-12.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT - 3
(CASE NO. 2:19-cv-01488-MJP)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

# I. ARGUMENT AND CITATION TO AUTHORITY

## A. Plaintiff's Retaliation Claim Fails.

### *1) Plaintiff Cannot Establish a Prima Facie Case of Retaliation.*

In support of his retaliation claim, Plaintiff argues that he has satisfied the requirement of causation because Ms. Copeland was aware of Plaintiff's concerns regarding Mr. Beard's race. Plaintiff argues that Ms. Copeland was a decision maker, despite the fact that this contradicts his own testimony that Ms. Copeland deferred the decision to others and that "her involvement was as close to irrelevant as [Plaintiff] could imagine." (Pl. Dep. 135:2-136:4). Additionally, Ms. Copeland testified that she was not the decision maker and merely implemented the recommendations. (Copeland Dep. 138:15-139:3, 145:15-19). Plaintiff cannot show that anyone who made the decision to terminate his employment was aware of (or suspected) his complaints. Thus, his retaliation claim fails for this reason alone.

Plaintiff cites to the *Cornwell* case for the proposition that it is not appropriate for IBM to rely upon what its employees say as to what they knew. (Response at p. 18). But, Plaintiff is improperly shifting his burden to show that IBM decision makers were aware of his complaints, and he cannot simply rely on the *Cornwell* decision while simultaneously not producing any evidence of his own to show causation. In reality, Plaintiff cannot show knowledge because he does not (and cannot) dispute that Ms. Copeland did not tell anyone about his alleged complaints or that any of the actual decision makers knew of his alleged complaints or that they even knew Mr. Beard's race at the time of the investigation. (Copeland Dep. 54:8-10; Mitchell Decl., Dkt. #49-11, ¶ 6; Nunez Decl., Dkt. #49-12, ¶ 6; Kenny Dep. 339:19-340:4; Alexander Dep. 20:7-17, 299:6-15; Teltsch Dep. 147:20-148:1, 179:24-180:3; Mihalik Dep. 239:7-9, 265:14-17; Mandel Dep. 149:14-16, 167:12-18; Leonard Dep. 191:8-9, 247:7-16).[6] "An employee must still produce sufficient evidence that his or her protected activity was a substantial factor in the employer's

---

[6] In his Response, Plaintiff claims that he told Mr. Larkin, the investigator, about his concerns. But when the cited testimony is read, it is clear that Plaintiff *believes* he told Mr. Larkin this information, but Mr. Larkin testified that he did not know Mr. Beard's race. Additionally, Mr. Larkin did not make the decision to terminate Plaintiff: his role was to investigate, and present information related to the situation, not to make disciplinary recommendations. (Pl. Dep. 81:24-82:18; Larkin Dep. 61:3-15, 161:23-162:4, 184:13-19, 297:11-25).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT - 4
(CASE NO. 2:19-cv-01488-MJP)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

decision to take adverse action against the employee." *Cornwell v. Microsoft Corp.*, 192 Wn.2d 403, 420 (2018). Plaintiff has failed to produce sufficient evidence.

Plaintiff argues that (1) his prior good performance reviews, including one six weeks prior to his termination from Mr. Mitchell, (2) proximity between his complaints and termination, and (3) because Ms. Johnson's real motive was to cover up Mr. Beard's differential treatment establish his *prima facie* case of retaliation and demonstrate a retaliatory motive. However, it is undisputed that Mr. Mitchell was not involved in the decision to terminate Plaintiff's employment. (Mitchell Dep. 130:13-21).[7] Additionally, temporal proximity alone is insufficient to establish retaliation. *See Serlin v. Alexander Dawson Sch., LLC*, 656 Fed. App'x 853, 856 (9th Cir. 2016) (three months between complaint and decision was insufficient evidence of causation where no other evidence of retaliation existed). Lastly, Ms. Johnson testified that she was unaware of Mr. Beard's race until after Plaintiff's termination. (Johnson Dep. 75:17-19). Thus, Plaintiff's allegation that Ms. Johnson's motive was to cover up differential treatment of an individual whose race she was unaware of, is nothing more than unfounded speculation and cannot support his claim.

### 2) *Plaintiff Cannot Show that IBM's Legitimate Non-retaliatory Reason for His Termination of Employment was a Pretext for Retaliation.*

Plaintiff argues that IBM's reason for his termination is pretext because IBM has presented multiple shifting and incompatible reasons for the termination. Plaintiff's argument misses the mark. The individual who made the recommendation to terminate Plaintiff's employment (Linda Kenny) testified that she recommended termination for Plaintiff because Plaintiff (and Mr. Temidis) did not add quota for the SAS deal to Mr. Donato's quota, Plaintiff was aware of but did not use the Specific Transaction provision or speak with anyone about using that provision, and she felt he exercised poor business judgment by not speaking with the upline manager before approving the commissions even though Plaintiff said he expected his manager to raise red flags that never materialized. (Kenny Dep. 48:18-49:7, 71:4-11, 72:8-13,

---

[7] The cited portions of Dave Mitchell's Deposition ("Mitchell Dep.") are attached as Exhibit K to the Reply Declaration of Justin Barnes filed herewith.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT - 5
(CASE NO. 2:19-cv-01488-MJP)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

85:2-8, 91:17-23, 107:14-24, 226:2-228:3, 228:14-229:7, 235:18-24). None of these reasons are incompatible or inconsistent, and all are supported by the testimony in this case. All of Plaintiff's asserted evidence of pretext fail as either unsupported or conclusory.

Plaintiff states that Ms. Johnson testified that quota should not be added after a deal closes. (Response at p. 20). However, nowhere in the cited testimony to support this assertion does Ms. Johnson state that. Rather, Ms. Johnson testified that she viewed the addition of the SAS account to Mr. Donato's and Mr. Temidis's territory without a corresponding increase in quota as a business process violation, thus, prompting her to reach out to Internal Audit. (Johnson Dep. 29:7-30:1, 133:7-134:10, 141:6-142:2). Plaintiff also claims the timing of Ms. Johnson's allegation to Internal Audit is suspect because she previously reviewed the commissions on the SAS deal but found no error. This is incorrect. On October 7, 2017 when finance reached out to Ms. Johnson, she did not say there was no error. Rather, she informed finance about the review process. *See* Exhibit 20 to the Declaration of Toby Marshall (Dkt. #55-24). This email from finance then prompted Ms. Johnson to examine the payments on the deal, which is when she discovered that SAS was added to Mr. Temidis and Mr. Donato's territories after the deal closed without a corresponding addition to quota, which resulted in the large payment to Mr. Donato. (Johnson Dep. 133:7-134:10).

Plaintiff next points to alleged flaws in Mr. Larkin's investigation. First, he claims that Mr. Larkin and Ms. Johnson testified that the Specific Transaction provision in the IPL and the uncapped language in a PowerPoint conflicted. However, neither witness testified to this. Rather, Ms. Johnson testified that commissions on IQPs are uncapped, subject to the terms in the IPL and Mr. Larkin testified that the provisions in the IPL give IBM the right to adjust commissions. (Johnson Dep. 40:11-15; Larkin Dep. 66:7-14). In any event, even if the two conflict it is not material and still does not show retaliation particularly in light of the fact that neither Ms. Johnson nor Mr. Larkin were aware of Mr. Beard's race or Plaintiff's alleged complaints. (Johnson Dep. 75:8-19, 194:12-16; Larkin Dep. 61:3-15, 297:11-25).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT - 6
(CASE NO. 2:19-cv-01488-MJP)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

Plaintiff also claims IBM's reasons for his termination are pretext because Mr. Larkin relied on Ms. Johnson and her expertise during the investigation, because he did not investigate Plaintiff's basis for "not capping" Mr. Donato's commissions, because the decision makers relied on the investigation report, and because Ms. Kenny testified she was not personally aware of similar circumstances at the time of the investigation. However, none of these allegations demonstrate that retaliation was a substantial factor in Plaintiff's termination and are nothing more than conclusory allegations of retaliation by Plaintiff, particularly in light of the fact that none of the decision makers were aware of Plaintiff's alleged protected activity. *Atkins v. Runyon*, No. 97-56322, 1998 U.S. App. LEXIS 17532, at *3 (9th Cir. July 27, 1998) (citing *Collings v. Longview Fibre Co.*, 63 F.3d 828, 833-34 (9th Cir. 1995) (to avoid summary judgment, employee must produce specific, substantial, non-conclusory evidence of pretext)); *Dean v. Avis Budget Car Rental, LLC*, Case No. C10-277 MJP, 2011 U.S. Dist. LEXIS 50144, at *17-18 (W.D. Wash. May 10, 2011) (granting summary judgment to employer on retaliation claim where despite plaintiff's argument that defendant conducted an inadequate investigation into plaintiff's complaint, but rather investigated complaints against plaintiff, plaintiff could not show he was terminated in retaliation for his complaints).

Plaintiff next argues that because other individuals who made similar "mistakes" were not disciplined suggests Plaintiff was terminated for his alleged complaints. Specifically, Plaintiff argues that Bob Finnecy and Stephanie Yuri Kajishima made the same mistakes as Plaintiff and were not fired. As an initial matter, it is notable that Mr. Temidis and Mr. Lee were also discharged, so Plaintiff's allegation that other individuals were not disciplined is false. Moreover, with respect to Mr. Finnecy and Ms. Kajishima, there is no allegation that Mr. Finnecy or Ms. Kajishima engaged in the same conduct as Plaintiff (adding the SAS account to anyone's territory after the deal closed without a corresponding increase in quota as Plaintiff admits he did). (Pl. Dep. 95:22-96:21, 97:13-98:13). In other words, even if Mr. Finnecy or Ms. Kajishima did engage in misconduct, Plaintiff has offered no evidence that their conduct was sufficiently similar such that they are proper comparators. *Kelleher v. Fred Meyer Stores, Inc.*,

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT - 7
(CASE NO. 2:19-cv-01488-MJP)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

No. CV-13-3108-SMJ, 2015 U.S. Dist. LEXIS 10576, at *50 (E.D. Wash. Jan. 29, 2015) (granting summary judgment to employer on retaliation claim where there was no genuine issue as to pretext where alleged comparators did not commit the same misconduct and their conduct did not fall within enumerated conduct by the employer that called for immediate termination as plaintiff did). Thus, Plaintiff's argument again falls short.

Lastly, it is worth noting that both Mr. Temidis and Mr. Lee were terminated at the same time as Plaintiff and both of them admit that they never raised any concerns of race discrimination to *any* of the individuals involved in the investigation or decision. *See* Declaration of Andre Temidis (Dkt. #56) and Declaration of Michael Lee (Dkt. #57). The individuals who made the decision to terminate the employment of Plaintiff, Mr. Temidis, and Mr. Lee confirmed that they were not aware of any alleged protected activity by Mr. Temidis or Mr. Lee. (Alexander Dep. 299:16-19; Kenny Dep. 339:24-340:4; Mihalik Dep. 265:14-20; Teltsch Dep. 179:24-180:6; Leonard Dep. 247:17-24). In other words, even if the decision makers were aware of Plaintiff's alleged protected activity (which they were not as noted above), it is undisputed they were not aware of any protected activity by Mr. Temidis or Mr. Lee, yet they still terminated their employment. This obviates any allegations of pretext.

**B. Plaintiff's Wrongful Termination Claim Fails.**

Plaintiff claims his discharge was in retaliation for reporting employer misconduct: violation of the Washington Law Against Discrimination ("WLAD") and the policy against racial discrimination found in RCW 49.60.030, (Dkt. #20, at ¶¶107, 113), and the policy set forth in RCW 49.52.050 regarding payment of wages earned. (Dkt. #20, at ¶¶110, 113). In his Response, in support of his wrongful termination in violation of the policy against racial discrimination, he relies on the arguments made in his Response in support of his retaliation claim. For the reasons discussed above in I.A, Plaintiff's wrongful termination claim based on the policy against racial discrimination fails as Plaintiff cannot show his alleged complaints of race discrimination caused his termination of employment.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT - 8
(CASE NO. 2:19-cv-01488-MJP)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

Likewise, Plaintiff has no evidence that his alleged whistleblowing related to the payment of wages caused his termination. Specifically, no one involved in the decision was aware of any complaints of unlawful activity by Plaintiff. (Kenny Dep. 339:19-340:4; Alexander Dep. 20:7-17, 299:6-15; Teltsch Dep. 147:20-148:1, 179:24-180:3; Mihalik Dep. 239:7-9, 265:14-17; Mandel Dep. 149:14-16, 167:12-18; Leonard Dep. 191:8-9, 247:7-16). In support of this claim, Plaintiff cites the *Dries* case. However, that case is distinguishable. The court in *Dries* found that plaintiff could survive summary judgment on his wrongful termination claim where he was terminated three days after he complained about not being paid his commissions. *Dries v. Sprinklr, Inc.*, No. C20-47-MLP, 2020 U.S. Dist. LEXIS 192416, at *20-22 (W.D. Wash. Oct. 16, 2020). Here, Plaintiff was terminated three months after his last alleged complaint of race discrimination. (Pl. Dep. 19:16-19, 78:23-80:6). Thus, *Dries* does not support Plaintiff's wrongful termination claim.

Accordingly, the Court should grant IBM summary judgment on Plaintiff's wrongful termination claim.

**C. Plaintiff's Age Discrimination Claim Fails.**

In his Response, Plaintiff claims his age discrimination claim is based on more than just speculation and cites to an EEOC determination. However, Plaintiff did not file an EEOC charge related to his claim of age discrimination. *See* Plaintiff's Interrogatory Responses, Ex. L at p. 4 ("no other proceedings exist relevant to the claims asserted in this litigation.").[8] Accordingly, the EEOC determination does not relate to Plaintiff or his claims. Additionally, Plaintiff admits in his Response that the individuals subject to the EEOC determination were terminated as part of resource actions (IBM's terminology for a reduction in force), it is undisputed that Plaintiff was not terminated as part of a resource action. (Response at p. 23; Kenny Dep. 140:1-141:1). In short, Plaintiff is attempting to use a determination by the EEOC related to other employees who were terminated for different reasons and by different decision makers as a basis for his age discrimination claim.

---

[8] Plaintiff's Interrogatory Responses are attached as Exhibit L to the Reply Declaration of Justin Barnes filed herewith.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT - 9
(CASE NO. 2:19-cv-01488-MJP)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

Plaintiff also claims that because Mr. Larkin assumed Plaintiff was over 40 and because Ms. Copeland and Mr. Mandel knew Plaintiff had worked at IBM for many years demonstrates age discrimination. But, the undisputed evidence demonstrates that none of the decision makers were aware of Plaintiff's age at the time of his termination. (Alexander Dep. 299:20-22; Teltsch Dep. 179-16-18; Kenny Dep. 339:2-7; Mihalik Dep. 265:21-23; Mandel Dep. 175:2-3; Leonard Dep. 246:23-247:1). And regardless, even if these individuals knew his age, that does not equate to age discrimination or save his claims.

Plaintiff has no evidence that his age was a substantial or motivating factor in his termination. Accordingly, the Court should grant IBM summary judgment on Plaintiff's age discrimination claim.

**D. Plaintiff's Unjust Enrichment Claim Fails.**

Again, in his Response, Plaintiff wants to ignore his own testimony and instead misreads the provision in his IPL demonstrating he was not entitled to any additional commissions after his termination.

Specifically, Plaintiff's IPL stated:

> **Leaving the Plan Early:** If for any reason (including leaving IBM's employment) you leave your currently assigned Incentive Plan before the last day of its full-plan period, ***your final achievement for that Plan will be based on business results credited to you as of the last day of the last full-month you were on that Plan***. The final incentive payments will be made according to the normal payment schedule for that Plan. If you remain with IBM in a non-incentives role, after receiving your final incentives payment your future IBM compensation will be determined by the terms of your new role.

(Pl. Dep. Ex. 12, at p. 3 (emphasis added)). Thus, per his IPL, Plaintiff was due to be paid his final amount based on results credited to him as of the last day of his employment. He was not entitled to any additional commissions after his termination. Indeed, although he tries to ignore this, Plaintiff admitted in his deposition that he was paid all commissions he was due as of the last day of his employment. (Pl. Dep. 153:22-154:4). Thus, based on the unambiguous terms of

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT - 10
(CASE NO. 2:19-cv-01488-MJP)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

his IPL, Plaintiff was not entitled to additional commissions after his termination. *See Babcock v. ING Life Ins. & Annuity Co.*, No. 12-CV-5093-TOR, 2013 U.S. Dist. LEXIS 1035, at *21-23 (E.D. Wash. Jan. 2, 2013) (granting defendant summary judgment on plaintiff's unjust enrichment claim where a release made clear that plaintiff was entitled to periodic payments but not any investment proceeds of the annuity purchased by defendant). Defendant cannot be unjustly enriched when Plaintiff had no right to the payment demanded. Plaintiff was paid according to his IPL. Accordingly, the Court should grant IBM summary judgment on Plaintiff's unjust enrichment claim.

## II. CONCLUSION

For the foregoing reasons, IBM respectfully requests that this Court grant its Motion for Summary Judgment and dismiss this action in its entirety.

DATED this 8th day of January, 2021.

    Respectfully submitted,

    JACKSON LEWIS P.C.

    By: *s/ Barry Alan Johnsrud*
        Barry Alan Johnsrud, WSBA #21952
        520 Pike Street, Suite 2300
        Seattle, WA 98101
        Telephone: 206-405-0404
        Facsimile: 206-405-4450
        Email: Barry.Johnsrud@jacksonlewis.com

    *s/ Justin R. Barnes*
    Justin R. Barnes (*pro hac vice*)
    Kelli N. Church (*pro hac vice*)
    JACKSON LEWIS P.C.
    171 17th Street, N.W., Ste. 1200
    Atlanta, GA 30363
    Telephone: (404) 525-8200
    Facsimile: (404 525-1173
    Email: Justin.Barnes@jacksonlewis.com
    Email: Kelli.Church@jacksonlewis.com

    Attorneys for Defendant

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT - 11
(CASE NO. 2:19-cv-01488-MJP)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

# DECLARATION OF SERVICE

The undersigned declares under penalty of perjury under the laws of the United States of America that on this day, I electronically filed a true and accurate copy of the document to which this declaration is affixed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Toby J. Marshall, WSBA #32726
Brittany J. Glass, WSBA #52095
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, WA 98103
tmarshall@terrellmarshall.com
bglass@terrellmarshall.com

Attorneys for Plaintiff

Matthew E. Lee, *pro hac vice*
Jeremy R. Williams, *pro hac vice*
WHITFIELD BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
matt@whitfieldbryson.com
jeremy@whitfieldbryson.com

Attorneys for Plaintiff

DATED this 8th day of January, 2021 at Lynnwood, Washington.

_____
Nani Vo

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT - 12
(CASE NO. 2:19-cv-01488-MJP)

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404