THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

SCOTT KINGSTON,

    Plaintiff,

  v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation,

    Defendant.

NO. 2:19-CV-01488-MJP

**PLAINTIFF'S RESPONSE TO INTERNATIONAL BUSINESS MACHINES CORPORATION'S MOTIONS IN LIMINE**

PLAINTIFF'S RESPONSE TO INTERNATIONAL BUSINESS MACHINES CORPORATION'S MOTIONS IN LIMINE
CASE NO. 2:19-CV-01488 MJP

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................. 1

II. ARGUMENT AND AUTHORITY ................................................................. 1

    A. Evidence related to IBM's discriminatory treatment of Jerome Beard and Kami Nazem is relevant ........................................ 1

    B. Evidence related to IBM's companywide practice of age discrimination is relevant ............................................ 5

    C. Evidence related to Michael Lee's medical condition is relevant ....................... 7

    D. Evidence related to IBM's policy changes is relevant ....................................... 9

    E. The Beard settlement and summary judgment order are relevant because they show that Kingston's belief that IBM discriminated against Beard was reasonable and that IBM's purported nondiscriminatory reason for terminating Kingston is pretext ............................................................................... 11

III. CONCLUSION ................................................................................................ 15

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS IN
LIMINE - i
CASE NO. 2:19-CV-01488 MJP i

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

## TABLE OF AUTHORITIES

Page

*Bultena v. Washington State Department of Agriculture*,
   319 F. Supp. 3d 1215 (E.D. Wash. 2018) .................................................................. 4

*Desert Palace, Inc. v. Costa*,
   539 U.S. 90 (2003) ..................................................................................................... 6

*E.E.O.C. v. Crown Zellerbach Corp.*,
   720 F.2d 1008 (9th Cir. 1983) ............................................................................. 2, 3

*Goold v. Hilton Worldwide*,
   No. 1:13-CV-00438-JLT, 2014 WL 4629083 (E.D. Cal. Sept. 15, 2014) .................... 5

*Hargrave v. University of Washington*,
   113 F. Supp. 3d 1085 (W.D. Wash. 2015) .................................................................. 7

*Hemmings v. Tidyman's Inc.*,
   285 F.3d 1174 (9th Cir. 2002) .................................................................................... 5

*Heyne v. Caruso*,
   69 F.3d 1475 (9th Cir. 1995) ...................................................................................... 6

*Reyna v. City of Portland*,
   270 F. App'x 682 (9th Cir. 2008) ............................................................................... 4

*Smith v. Aufderheide*,
   371 F. App'x 825 (9th Cir. 2010) ............................................................................... 7

*Sprint/United Management Company. v. Mendelsohn*,
   552 U.S. 379 (2008) ................................................................................................... 2

*Sussel v. Wynne*,
   No. CIV 05-00444ACKKSC, 2006 WL 5940802 (D. Haw. Oct. 12, 2006) ................ 6

### FEDERAL RULES & STATUTES

Fed. R. Civ. P. 404(b) ........................................................................................................ 7

### OTHER AUTHORITIES

Wash. Pattern Jury Instr. Civ. WPI 330.01 (7th ed. July 2019) ..................................... 2, 5

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS IN
LIMINE - ii
CASE NO. 2:19-CV-01488 MJP ii

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

## I. INTRODUCTION

Scott Kingston alleges IBM fired him for opposing what he reasonably believed to be discriminatory and wrongful conduct related to IBM's capping of Jerome Beard's commissions. Kingston also alleges IBM fired him because of his age. IBM contends it terminated Kingston and two other managers, Michael Lee and Andre Temidis, for failing to reduce commissions to a sales employee after a deal closed.

The parties agree that the crux of the of the trial will be determining the "legitimacy of IBM's decision to terminate Plaintiff." Dkt. No. 77 at 3. Yet IBM seeks to exclude several categories of evidence that support Kingston's claims and rebut IBM's purported basis for terminating Kingston, including (1) evidence related to IBM's alleged discrimination against Beard and another sales representative, Kami Nazem, (2) evidence of companywide intent to discriminate against older employees, (3) evidence of Michael Lee's medical condition, and (4) evidence of changes to IBM's commission policies. IBM also moves to exclude evidence related to Jerome Beard's discrimination case against IBM, including the summary judgment order, settlement agreement, and even the fact of settlement in that case. This evidence is highly probative of Kingston's reasonable belief that IBM discriminated against Beard, an element of Kingston's retaliation and wrongful termination claims. Each of IBM's motions in limine should be denied.

## II. ARGUMENT AND AUTHORITY

**A. Evidence related to IBM's discriminatory treatment of Jerome Beard and Kami Nazem is relevant.**

IBM contends that all evidence related to its alleged discriminatory treatment of Jerome Beard should be excluded. Kingston does not intend to litigate whether Beard was *actually* discriminated against because he does need to prove that to win at trial. But Kingston must be allowed to introduce evidence of the *alleged* discrimination, e.g. what he perceived, what he reported, and why it was reasonable, in order to present his case. The latter goes directly to the

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 1
CASE NO. 2:19-CV-01488 MJP 1

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

1  heart of Kingston's entire case because Kingston must show that he opposed discrimination
2  against Beard and that his belief that Beard was discriminated against was reasonable. Wash.
3  Pattern Jury Instr. Civ. WPI 330.05 (7th ed. July 2019) (to establish unlawful retaliation,
4  plaintiff has burden of proving he was opposing what he "reasonably believed to be
5  discrimination on the basis of . . . race"); Wash. Pattern Jury Instr. Civ. WPI 330.51 (7th ed.
6  July 2019) (to establish wrongful termination, plaintiff has burden of proving he reported what
7  he "reasonably believed to be employer misconduct"). The Ninth Circuit has recognized this
8  distinction, including in the authority IBM cites. *See Smith v. Aufderheide,* 371 F. App'x 825,
9  828 (9th Cir. 2010) (district court did not err in excluding evidence concerning truth of
10 discriminatory acts but allowing evidence related to plaintiff's "activities opposing alleged
11 discrimination likely known by the decision makers, which included evidence going to whether
12 [plaintiff's] belief that the discrimination in question had occurred was reasonable"); *see also*
13 *E.E.O.C. v. Crown Zellerbach Corp.,* 720 F.2d 1008, 1013 n. 2 (9th Cir. 1983) (evidence
14 related to underlying charge of discrimination supported finding that plaintiff's belief in
15 discrimination was reasonable even though discrimination charges were ultimately dismissed).

16       IBM acknowledges that Kingston should be permitted to introduce evidence "which is
17 relevant to Plaintiff's alleged protected activity and whether his belief of alleged discrimination
18 was reasonable." Dkt. No. 77 at 5. Yet, IBM attempts to exclude testimony and documents
19 related to the underlying discrimination allegations that would support Kingston's reasonable
20 belief. The witnesses Kingston may call to testify about IBM's disparate treatment of Beard are
21 Beard himself and the chain of IBM managers and executives involved in either approving or
22 capping his commissions: Temidis, Kingston, Greg Mount (Beard's first-line manager), Dave
23 Mitchell and Dorothy Copeland (Beard's third-line managers), Karla Johnson and Brian
24 Mulada (commission and finance executives, respectively). Each of these witnesses has
25 relevant knowledge related to Kingston's opposition of IBM's alleged discrimination and
26 whether Kingston's belief was reasonable. The documents related to IBM's alleged
27

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 2
CASE NO. 2:19-CV-01488 MJP 2

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

discrimination of Beard are inextricably linked to the protected activity for which Kingston alleges he was terminated—reporting the capping of Beard's commissions as discriminatory—and to the reasonableness of his belief. *See Crown Zellerbach Corp.,* 720 F.2d at 1013 n. 2. Excluding all evidence related to IBM's alleged discriminatory treatment would severely prejudice Kingston and prevent him from presenting the relevant facts of his termination to the

Evidence related to IBM's alleged discrimination against Beard and Kami Nazem is also relevant to the issue of pretext—specifically, IBM's assertion that it did not retaliate against Kingston because two other managers, Temidis and Lee, were also fired and IBM was unaware of any protected activity by these other managers. *See, e.g.*, Dkt. No. 64 at 8. Kingston has produced evidence that both Temidis and Lee also raised the issue of discrimination with managers on the ESA team. *See* Dkt. No. 56 (Declaration of Andre Temidis) ¶ 13 ("I told Mr. Kingston that IBM's treatment appeared to me to discriminate against Mr. Beard based on his race and that I didn't think it was right. I shared further details with Mr. Kingston about Mr. Donato and the SAS deal during that and other conversations about this."); Dkt. No. 57 (Declaration of Michael Lee) ¶ 16 ("I told Greg Mount, a First Line Manager on the ESA team, that the disparate treatment with commissions between Mr. Nazem and Mr. Sherrin in 2017 seemed like discrimination based on Mr. Nazem's race, that it otherwise violated IBM's commissions policy, and that I didn't think it was right.").

Evidence showing Temidis and Lee discussed their concerns about racial discrimination against Beard and Nazem is critical to Kingston's ability to refute IBM's contention that Lee and Kingston were terminated for non-retaliatory reasons. Indeed, the Court previously found that evidence related to IBM's treatment of Nazem "[was] relevant to [Kingston's] allegation that he was fired for pretextual reasons." *See* Dkt. No. 34 at 1. The Court also recognized that evidence related to the Temidis and Lee's termination may be relevant to the issue of pretext and "whether IBM had a practice of retaliating against whistleblowers." *Id.* Kingston should be

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 3
CASE NO. 2:19-CV-01488 MJP 3

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

1  permitted to introduce evidence of the alleged discrimination against Beard and Nazem to rebut
2  IBM's contention that it had no reason to retaliate against Temidis and Lee.

3    IBM's citation to *Bultena* and *Reyna* for the proposition that evidence of past
4  discriminatory conduct is improper propensity or pattern evidence misses the mark. In *Bultena*
5  *v. Washington State Department of Agriculture*, the court found that evidence "focus[ing] on
6  discriminatory conduct primarily directed at Hispanic individuals and short-term employees"
7  was improper propensity evidence in a case involving a long-time employee's allegations of
8  gender discrimination. 319 F. Supp. 3d 1215, 1221 (E.D. Wash. 2018). Similarly, in *Reyna v.*
9  *City of Portland*, the court held that the trial court did not err by excluding evidence of
10 "tangentially relevant" conduct that occurred years prior the conduct at issue in that case. 270
11 F. App'x 682, 686 (9th Cir. 2008). Kingston does not intend to litigate whether Beard and
12 Nazem were actually discriminated against or use evidence of the alleged racial discrimination
13 to show a pattern or propensity of discrimination by IBM. Rather, Kingston will rely on
14 evidence relating to Beard and Nazem to give context to his claim that he and his fellow
15 managers were retaliated against for reporting discriminatory conduct and to refute IBM's
16 assertion that Lee and Temidis's termination obviate a retaliatory motive.

17   IBM argues that even if relevant, this evidence is unduly prejudicial because "[i]f the
18 jury believes IBM discriminated against Mr. Beard or Mr. Nazem . . . they may automatically
19 assume that IBM terminated Plaintiff for an improper reason." This argument misses the point.
20 Either IBM terminated Kingston to cover up its discriminatory conduct as Kingston contends,
21 or the company terminated him for failing to apply commissions policies as IBM contend. IBM
22 cannot exclude evidence that tends to prove Kingston's version of events simply because the
23 jury might believe it to be true.

24 **B.    Evidence related to IBM's companywide practice of age discrimination is relevant.**

25   "The Ninth Circuit has recognized that past discriminatory conduct is admissible . . . in
26 discrimination cases to show an employer's state of mind with respect to the protected class."

27

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 4
CASE NO. 2:19-CV-01488 MJP 4

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

1   *Bultena*, 319 F. Supp. 3d at 1221 (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1208
2   n.3 (9th Cir. 2002)). To prove his age discrimination claim, Kingston must show that his age
3   was a substantial factor in IBM's decision to terminate him. Wash. Pattern Jury Instr. Civ. WPI
4   330.01 (7th ed. July 2019). In its defense, IBM contends that Kingston's termination was
5   motivated by a legitimate, non-discriminatory reason. The EEOC determination letter, which
6   the Court cited in its order denying summary judgment (Dkt. No. 75 at 9, 16), is highly
7   probative on this issue. The letter, which was released "[a]round the same time Plaintiff was
8   terminated" stated that EEOC's "investigation uncovered top-down messaging from [IBM]'s
9   highest ranks directing managers to engage in an aggressive approach to significantly reduce
10  the headcount of older workers to make room for Early Professional Hires." *Id.*; Dkt. No. 55-
11  59. The fact that the EEOC found evidence of an aggressive, top-down campaign to terminate
12  older workers is highly relevant to the question of whether age was a substantial factor in
13  IBM's decision to terminate Kingston. *See Goold v. Hilton Worldwide*, No. 1:13-CV-00438-
14  JLT, 2014 WL 4629083, at *6 (E.D. Cal. Sept. 15, 2014) ("As Defendants make clear, they will
15  counter the prima facie case with evidence that Plaintiff's firing occurred due to a legitimate,
16  non-discriminatory reason. In response, Plaintiff is entitled to offer evidence of pretext . . .
17  includ[ing] evidence of others who suffered retaliation after making complaints of unlawful
18  employment actions.").

19       The probative value of the EEOC determination letter to IBM's motive is "especially
20  high because of the inherent difficulty of proving state of mind." *Heyne v. Caruso*, 69 F.3d
21  1475, 1480 (9th Cir. 1995) (reversing trial court's ruling excluding evidence of employer's
22  harassment of other female employees because it "significantly hampered [plaintiff] in her
23  efforts to challenge [her employer's] asserted motive."); *see also Desert Palace, Inc. v. Costa*,
24  539 U.S. 90, 99–100 (2003) ("We have often acknowledged the utility of circumstantial
25  evidence in discrimination cases . . . . [E]vidence that a defendant's explanation for an
26  employment practice is unworthy of credence is one form of *circumstantial evidence* that is
27

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 5
CASE NO. 2:19-CV-01488 MJP 5

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

1  probative of intentional discrimination. . . . Circumstantial evidence is not only sufficient, but
2  may also be more certain, satisfying and persuasive than direct evidence.") (quotation marks
3  omitted and emphasis in original). Because there is no direct proof of IBM's discriminatory
4  intent, as is often the case in discrimination cases, the probative value of this evidence is
5  significant and is not outweighed by a risk of unfair prejudice.

6       IBM notes that the EEOC determination at issue concerned IBM employees who were
7  terminated as part of resource actions, but that does not make the agency's finding of
8  nationwide "discriminatory animus based on age" any less relevant to IBM's motivations in
9  Kingston's case. *See* Dkt. No. 55-59 at 3; *Sussel v. Wynne*, No. CIV 05-00444ACKKSC, 2006
10 WL 5940802, at *3 (D. Haw. Oct. 12, 2006) (finding prior acts of discrimination against
11 members of plaintiff's class "highly probative despite the fact that the employment actions
12 allegedly taken . . . are dissimilar."). And the temporal proximity of the EEOC's finding of
13 discriminatory motives toward older employees (from 2013 to 2018) and Kingston's
14 termination (2018) distinguishes this case from *Reyna*, which involved conduct that occurred
15 years before the action at issue in that case. 270 F. App'x at 686.

16      The *Sprint* and *Hargrave* cases on which IBM relies also do not support the company's
17 position. In *Sprint/United Management Company. v. Mendelsohn*, the Supreme Court refused
18 to adopt a rule that prior discrimination evidence was *per se* admissible or *per se* inadmissible,
19 counseling instead that the inquiry is "fact based and depends on many factors, including how
20 closely related the evidence is to the plaintiff's circumstances and theory of the case." 552 U.S.
21 379, 388 (2008). In *Hargrave v. University of Washington*, the court applied the *Sprint* test and
22 determined that hiring evidence should be excluded in a race and national origin discrimination
23 case in part because "the hiring decisions do not show discrimination *against* any professor on
24 the basis of race or national origin." 113 F. Supp. 3d 1085, 1106 (W.D. Wash. 2015) (emphasis
25 in original). Here, the EEOC explicitly found that from 2013 to 2018, IBM harbored a
26 "discriminatory animus based on age" and had a nationwide campaign to replace older workers.
27

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 6
CASE NO. 2:19-CV-01488 MJP 6

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

1  This evidence is closely related to and supports Kingston's theory that he was terminated
2  because of his age.

3        IBM argues that the EEOC letter is improper character evidence, but this does not
4  withstand scrutiny. Rule 404(b) explicitly permits evidence of other wrongs or acts to prove
5  motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack
6  of accident. As detailed above, IBM's motives are squarely at issue with respect to the age
7  discrimination claim, and the EEOC determination letter is relevant to prove IBM's state of
8  mind.

9   **C.**     **Evidence related to Michael Lee's medical condition is relevant.**

10        IBM argues that Kingston should be precluded from introducing evidence related to
11  Michael Lee's medical condition, including the fact that he was undergoing chemotherapy
12  during the events leading to his termination. This evidence is relevant because it provides
13  additional context to the investigation and termination of all three managers; specifically, that
14  the severe punishment that IBM levied on them (termination) was particularly inexplicable
15  under the circumstances. Lee was purportedly terminated because he failed to ensure that
16  William Sherrin's commission was adjusted after the commissions department made an error.
17  Ex. 1 (Kenny Dep.) at 177:3-21.[1] Lee told the investigator, Jeff Larkin, that he had been going
18  through chemotherapy treatments when he reviewed Sherrin's commission. Ex. 2 (Larkin Dep.)
19  at 217:14-21. Larkin did not include this fact in his report despite acknowledging that it was a
20  significant circumstance related to Lee's purported error. *Id.* at 217:22-219:19. Linda Kenny,
21  the HR executive who recommended terminating Lee also noted in her review that Lee had
22  "chemo-brain" and was "not thinking as clear." Ex. 1 (Kenny Dep.) at 334:22-336:1. And while
23  IBM fired Lee for his purported mistake, Larkin ███████████████████████
24  ████████████████████████████████████████████████████████████████
25  ██████████████████ Dkt. No. 51; *see also* Ex. 2 (Larkin Dep.) at 199:13- 200:12. at IBM-

---

[1] Unless otherwise noted, references to "Ex. __" are exhibits to the Declaration of Toby J. Marshall in support of Kingston's response to IBM's motions in limine.

**PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN** LIMINE - 7
CASE NO. 2:19-CV-01488 MJP 7

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

Kingston000404. These facts tend to show that IBM may have had an ulterior motive in Lee's termination and that IBM's investigation and disciplinary review was a sham designed to find fault with Lee, Kingston, and Temidis regardless of the facts.[2]

IBM cannot credibly argue that because he is a non-party, the facts of Lee's termination are irrelevant. It was IBM that grouped Kingston, Lee, and Temidis in one investigation and disciplinary review. And it was IBM that decided to terminate all three based on the results of that investigation and review. The facts related to the terminations of Kingston, Lee, and Temidis are inextricably intertwined. Indeed, IBM does not appear to contest this, as IBM's motion is directed towards polishing the narrative in a manner more favorable to the company. But the jury should get the full context, particularly since the context goes directly to IBM's motives. IBM says it investigated Lee for a mental lapse when he failed to follow up on a commission payment. Lee explained why. IBM disregarded that explanation and fired him. IBM now wants to keep the jury from even considering Lee's explanation. But the jury should consider this evidence; otherwise, the jury may (incorrectly) assume that Lee had no explanation, which would be prejudicial to Kingston. IBM chose to investigate and terminate these employees together and cannot change the narrative after the fact. Kingston should be permitted to present the complete facts to the jury in order to rebut IBM's purported legitimate motive.

**D.    Evidence related to IBM's policy changes is relevant.**

Changes to IBM's commission policies are relevant because they tend to show that IBM's purported basis for terminating Kingston was pretextual. One of the reasons IBM has given for Kingston's termination is that he failed to apply the significant transaction provision and that he should have known to do so. Dkt. No. 75 at 13. But Karla Johnson, one of IBM's 30(b)(6) designees, admitted that there was no guidance for managers and that IBM was aware

---

[2] It is worth noting that Kingston, Lee, and Temidis originally brought a case together in New York, IBM's home state. For some reason, IBM found its home state to be an inconvenient forum and moved to dismiss Lee's and Kingston's claims on that basis. The court granted that motion and both Lee and Kingston filed separate suits in their respective states of residence.

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 8
CASE NO. 2:19-CV-01488 MJP 8

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

that sales managers were unclear on the meaning and use of the significant transaction clause. Ex. 3 (Johnson Dep.) at 117:22-118:9, 119:8-17. Larkin, another 30(b)(6) representative, also concluded that the commission review process "pretty much sucks." Ex. 2 (Larkin Dep.) at 259:11-260:14. As a result of this confusion, IBM changed its commission review process by eliminating "management high achievement review as part of the process." Ex. 3 (Johnson Dep.) at 44:5–45:11. Now the "worldwide process team," a part of the commissions department, reviews any payment in excess of $400,000 to confirm the territory and quota are validated. *Id*. at 48:3–50:21, 52:14–55:11. The team does not consider whether the significant transaction provision should be applied. *Id*. at 55:12–56:11, 66:8-16. Likewise, the team does not consider "any information about the employee's contribution to the deal." *Id*. at 56:12-19. IBM's assertion that Kingston was terminated for failing to apply the procedures is contradicted by the fact that IBM's knew its commission review procedures were unclear, that managers were not provided guidance on the procedures and that because of all this, IBM ultimately changed the procedures.

IBM's attempt to exclude this evidence is particularly disingenuous given that the policy changes are recommended in the investigative report that IBM relies on as the basis for Kingston's termination and that the company has included on their exhibit list. *See* Dkt. No. 51. at IBM-Kingston000405. IBM has opened the door to this evidence by including the report on its list. Plaintiff would be prejudiced if IBM was able to rely on the potentially exculpatory parts of the report and exclude parts that may be inculpatory.

IBM argues that evidence of changes to IBM's procedures should be precluded under Federal Rule of Evidence 407. But the changes to IBM's procedures are not a subsequent remedial measure to prevent injuries like the one alleged by Kingston. Nor does Kingston intend to argue that had they been in place, he would not have been terminated. Instead, Kingston will rely on the changes in policies to show that IBM's procedures were so unclear and widely misunderstood that IBM had to change them, and the company's claim that

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 9
CASE NO. 2:19-CV-01488 MJP 9

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

1  Kingston's failure to apply the procedures was so egregious to warrant termination lacks
2  credibility.

3  IBM claims that it will be unfairly prejudiced by this evidence because it "presents a
4  tremendous risk that the jury will be biased against IBM and infer that IBM thought the process
5  needed correcting and that the reasons Plaintiff's employment was terminated are not legitimate
6  because IBM changed the process." In other words, evidence that IBM itself thought the
7  commissions procedures Kingston purportedly should have followed were so unclear that they
8  needed correcting might lead a jury to infer that IBM's basis for terminating Kingston was
9  illegitimate. Well, exactly. The legitimacy of IBM's basis for terminating Kingston is the crux
10 of this litigation, and any evidence in Kington's favor is going to be prejudicial to IBM on that
11 point. But that, of course, is not a basis for excluding the evidence. The evidence must be so
12 *unfairly* prejudicial as to outweigh its probative value. That is not the situation here.

13 **E.  The Beard settlement and summary judgment order are relevant because they show the reasonableness of Kingston's belief that IBM discriminated against Beard and the pretextual nature of IBM's purported nondiscriminatory reason for terminating Kingston.**

16 IBM seeks to exclude evidence related to Jerome Beard's lawsuit, including the
17 summary judgment order entered in that case as well as any reference to the subsequent
18 settlement between IBM and Beard. Beard sued IBM for discrimination, and the court
19 overseeing the case concluded that a reasonable juror could find IBM did indeed discriminate
20 against Beard. These facts are highly probative of the reasonableness of Kingston's belief that
21 IBM discriminated against Beard. Indeed, the Court relied on this evidence in its order denying
22 summary judgment in this case. Dkt. No. 75 at 5 ("In denying IBM's motion for summary
23 judgment on Beard's race discrimination claim in that case, the [Beard] court found that '[a]t
24 lease with respect to Donato, Beard has shown that Donato was a similarly situated employee
25 outside of the protected class whom IBM treated more favorably, or so a jury could reasonably
26 find.'") (quoting *Beard v. Int'l Bus. Machines Corp.*, No C 18-06783 WHA, 2020 WL
27 1812171, at *4 (N.D. Cal. Apr. 9, 2020)).

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 10
CASE NO. 2:19-CV-01488 MJP 10

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

1    As the Court already held, the settlement agreement likewise "contains information
2    about unpaid commissions that is relevant to Plaintiff's claims in this case." Dkt. No. 66 at 1-2
3    (ordering redaction of irrelevant information within agreement). Specifically, the fact that ▇
4    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ supports the reasonableness of
5    Kingston's belief that IBM was engaging in discrimination or other misconduct. The jury
6    should be permitted to view this highly probative evidence.

7    IBM blatantly misrepresents the evidence in asserting that Kingston admitted "no other
8    proceedings exist relevant to the claims asserted in this litigation." Dkt. No. 77 at 3. The
9    interrogatory to which IBM refers asked Kingston to identify "the index, docket, complaint,
10   charge or other identification number or designation of any petition, complaint, bankruptcy
11   proceeding, or administrative charge that *you* have filed or instituted against any person or
12   entity other than the instant action . . . ." Dkt. No. 65-1 at 163 (emphasis added). Kingston's
13   response merely confirms he has not filed any other action. It is not an admission of any kind
14   about the relevance of the Beard litigation, or any other litigation, to this suit. To the contrary,
15   Kingston has always maintained that his case is related to Beard's and up to this point, IBM
16   seems to have agreed. In fact, the parties stipulated that two deposition transcripts from the
17   Beard litigation would be deemed as taken in this case because over the factual overlap
18   between the two cases. Marshall Decl. at ¶ 6. Two other witnesses, Dorothy Copeland and
19   Karla Johnson, expressly adopted their deposition testimony in the Beard case as their
20   testimony in this case at their depositions. Ex. 4 at 13:10-14 (Copeland); Ex. 3 at 10:5-8
21   (Johnson).

22   IBM relies on several inapposite cases to argue that the settlement agreement and
23   summary judgment order should be excluded. None of those cases involves a settlement or
24   order from a related action that involved the same underlying facts, as we have here. And none
25   categorically denies the admissibility of prior settlements or orders.

26   In *Kruse Tech. P'ships v. DMAX, Ltd*, the court denied DMAX's motion to compel the
27

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 11
CASE NO. 2:19-CV-01488 MJP 11

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

plaintiff to disclose the amount of a prior settlement with a different defendant, finding that DMAX's desire to know the amount of the previous settlement for the purposes of its own settlement negotiations did not equate to relevance and that the amount of the unrelated settlement had no relation to the scope of the patents at issue in the litigation. 2010 WL 11519425, at *1-2 (Jan. 6, 2010). In *Houserman v. Comtech Telecommunications Corporation*, the defendants sought to exclude evidence related to settlements of non-party former employees. No. 2:19-CV-00336-RAJ, 2021 WL 467587, at *7 (W.D. Wash. Feb. 9, 2021). The court acknowledged that settlements in other cases may be admissible where the other employees are similarly situated to a plaintiff but found no similar situation there. *Id.*; *see also Jackson v. Federal Express* CV1001760MMMCWX, 2011 WL 13268074, at *2-3 (C.D. Cal. June 13, 2011) (noting that "[g]enerally speaking, evidence of other lawsuits against a defendant is admissible and offered for a proper purpose," and declining to rule on admissibility citing a lack of argument on relevance or prejudice by the parties). In *Jelinek v. American National Property and Casualty Company*, an insurance dispute, the court simply excluded evidence of other claims or lawsuits with no analysis. No. 2:15-CV-00779-RAJ, 2019 WL 5425254, at *2 (W.D. Wash. Oct. 23, 2019). And, in *Grouse River Outfitters Ltd. v. Oracle Corporation*, the court excluded evidence that the defendant had been sued by other customers as improper propensity evidence, but the court "decline[d] to enter an order categorically excluding evidence or argument about other lawsuits . . . ." No. 16-CV-02954-LB, 2019 WL 8918902, at *4 (N.D. Cal. June 21, 2019). Again, Kingston does not rely on the evidence from Beard's case to show that IBM had a propensity for discriminating. Rather, he will use it to demonstrate the reasonableness of his belief that IBM discriminated against Beard.

IBM contends that even if the settlement agreement and order between IBM and Beard are relevant, they should be excluded as unduly prejudicial and confusing because they might lead a jury to believe the company did something wrong. But that is exactly what Kingston alleges: IBM discriminated against Beard and then fired Kingston for reporting the company's

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 12
CASE NO. 2:19-CV-01488 MJP 12

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

1  misconduct. And IBM is directly challenging the reasonableness of Kingston's belief that IBM
2  discriminated against Beard. As long as IBM relies on that argument, it has opened the door
3  and given Kingston little choice but to show that others felt the same way, particularly Beard,
4  who so fervently believed IBM discriminated against him that he sued the company and, as a
5  result, received a ███████████████████████████████. Kingston would be
6  prejudiced if IBM were allowed to mount a full-throated defense at trial—claiming Kingston
7  was unreasonable, silly, and a fool to think that IBM discriminated against Beard—and then bar
8  the jury from what may be the most critical evidence showing Kingston's belief was
9  reasonable.

   The Beard settlement and his lawsuit generally are highly probative and should not be
11 excluded. If the Court is concerned that the introduction of the *Beard* settlement agreement or
12 summary judgment order would be unfairly prejudicial or confusing, Kingston respectfully asks
13 that the Court at least allow the relevant *facts* from the case to be presented to the jury. For
14 example, the following undisputed information could be read aloud to the jury and the jury
15 instructed to consider the information as evidence:

16 (1)  In 2018, Jerome Beard sued IBM, alleging the company
17      discriminated against him on the basis of race by capping his
18      commissions in 2017;
19 (2)  IBM argued to the court that no reasonable juror could find the
20      company had discriminated against Beard;
21 (3)  the court overruled this argument and allowed the case to proceed to
22      trial;
23 (4)  IBM and Beard subsequently entered into a mutual settlement
24      agreement;

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 13
CASE NO. 2:19-CV-01488 MJP 13

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

(5) as a part of the settlement, ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ ;[3] and

(6) Beard dismissed his claims against IBM.

This approach is consistent with steps taken by other courts in this district. *See, e.g., Steadman v. Green Tree Servicing*, LLC, No. C14-0854JLR, 2015 WL 11571003, at *1 (W.D. Wash. June 4, 2015) (excluding settlement document but allowing plaintiff to "put forth evidence regarding the existence of the [related] litigation, the subject matter of that litigation, the fact that a settlement was reached, and the terms of the settlement that relate to [the facts of the case]").

### III. CONCLUSION

For the reasons stated above, Mr. Kingston respectfully requests that the Court deny IBM's motions in limine.

RESPECTFULLY SUBMITTED AND DATED this 15th day of March, 2021.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Toby J. Marshall, WSBA #32726
Toby J. Marshall, WSBA #32726
Email: tmarshall@terrellmarshall.com
Brittany J. Glass, WSBA #52095
Email: bglass@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

---

[3] Alternatively, this line could be: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

PLAINTIFF'S RESPONSE TO INTERNATIONAL
BUSINESS MACHINES CORPORATION'S MOTIONS
IN LIMINE - 14
CASE NO. 2:19-CV-01488 MJP 14

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com

Matthew E. Lee, *Admitted Pro Hac Vice*
Email: matt@wbmllp.com
Jeremy R. Williams, *Admitted Pro Hac Vice*
Email: jeremy@wbmllp.com
WHITFIELD BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035

*Attorneys for Plaintiff*

**PLAINTIFF'S RESPONSE TO INTERNATIONAL BUSINESS MACHINES CORPORATION'S MOTIONS IN** LIMINE - 15

CASE NO. 2:19-CV-01488 MJP 15

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 319.5450
www.terrellmarshall.com