UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT KINGSTON,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>　　　　　　　　Defendant. | CASE NO. C19-1488 MJP<br><br>ORDER ON MOTION FOR<br>RECONSIDERATION |

This matter comes before the Court on Plaintiff's Trial Brief through which he moves for reconsideration of the Court's Order on Defendant's Summary Judgment Motion. (Dkt. No. 89 & 94.) Having reviewed the Trial Brief, Defendant's Response (Dkt. No. 98), and having heard oral argument on the matter on March 25, 2021, the Court GRANTS the motion for reconsideration.

## BACKGROUND

One of the claims Plaintiff Scott Kingston pursues is for wrongful discharge in violation of public policy. (Am. Compl. ¶¶ 104-19.) He claims that Defendant International Business Machines Corporation wrongly terminated him for reporting both racial discrimination and

wrongful withholding of wages earned. IBM moved for summary judgment on this claim, attacking both theories of liability. (Dkt. No. 48.) The Court denied summary judgment on this claim, in part, finding material facts in dispute as to whether Kingston was fired for reporting racial discrimination. (Dkt. No. 75 at 14-15.) But the Court granted summary judgment as to Kingston's claim that he was wrongfully terminated for reporting improper withholding of wages in violation of public policy. (Id.) The Court held:

> Because the Court previously found that under the terms of the IPL, IBM had the right to "cancel the commissions altogether" and therefore dismissed Plaintiff's Wage Act claim (Dkt. No. 27 at 10), Plaintiff has failed to meet his burden of demonstrating that he was protecting any employee's public-policy backed right to the commissions.

(Id.)

Kingston did not file a motion for reconsideration pursuant to Local Rule 7(h). Instead, he raised his disagreements with the Court's order on summary judgment in his trial brief. IBM filed a response and the parties provided further argument as to the merit of this claim during the pretrial conference held on March 25, 2021.

## ANALYSIS

**A.      Untimely Motion for Reconsideration**

Kingston's motion for reconsideration is untimely. Kingston waited 22 days to seek reconsideration, which is beyond the 14-day period permitted by Local Rule 7(h)(2). But Local Rule 7 does not require denial of the motion—it only states that failure to timely file the motion "may be grounds for denial." See Local Rule 7(h)(2). Given Kingston's persuasive arguments as to the manifest error in the Court's Order on Summary Judgment, the Court finds it appropriate to consider the merits of Kingston's argument. See Local Rule 7(h)(1) (noting that a party seeking reconsideration must show new facts or law or manifest error in the prior order). This is not to say that the Court has lightly chosen to consider the merits of Kingston's untimely

arguments. The parties' prior briefing on this subject was decidedly obtuse and failed to illuminate the precise issue before the Court. Only after Kingston filed his trial brief and provided oral argument did he clearly identify the merits of his argument and the manifest error in the Court's prior order. So in the interest of justice, the Court has considered Kingston's request.

**B.    Termination in Violation of Public Policy**

To prevail on a claim for wrongful discharge in violation of public policy "a plaintiff employee must demonstrate that his or her discharge may have been motivated by reasons that contravene a clear mandate of public policy." Martin v. Gonzaga Univ., 191 Wn.2d 712, 723 (2018) (citation and quotation omitted). The Court analyzes the claim under a burden shifting framework. See id. at 722-23. The plaintiff must first make a prima facie showing his termination was motivated by a reason that contravenes a clear mandate of public policy and that "the public-policy-linked conduct was a 'significant factor' in the decision to discharge" him. Id. at 725 (quoting Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wn.2d 46, 75 (1991)). If the plaintiff makes this prima facie showing of wrongful termination, the burden shifts to "the employer to articulate a legitimate nonpretextual nonretaliatory reason for the discharge." Id. at 725-26. If the employer meets this burden of production (a burden of persuasion less than a preponderance), then the burden swings back to the plaintiff. Id. at 726. The plaintiff must then prove that the reason was "pretextual, or by showing that although the employer's stated reason is legitimate, the [public-policy-linked conduct] was nevertheless a substantial factor motivating the employer to discharge the worker." Id. (citation and quotation omitted).

The tort has generally been limited to four situations, the first and last of which Kingston identifies: "(1) where employees are fired for refusing to commit an illegal act; . . . and (4) where

employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing." Gardner v. Loomis Armored, Inc., 128 Wn.2d 931, 936 (1996) (citing Dicomes v. State, 113 Wn.2d 612, 618 (1989)); Pl. Trial Brief at 3 (Dkt. No. 94 at 11). Where a plaintiff's claim falls into one of these four situations, then Court does not need to engage in the refined "Perritt" analysis as to clarity and jeopardy. See Martin, 191 Wn.2d at 724.

### 1. Plaintiff's prima facie case

The Court finds that its prior order erred in finding that Kingston cannot pursue a claim for wrongful discharge in violation of public policy predicated on his whistleblowing about wage withholding. Kingston correctly argues that a jury could conclude IBM fired him in retaliation for reporting what he reasonably believed was employer misconduct in withholding Beard's full commission. See Martin, 191 Wn.2d at 723-24.

Kingston identifies a clear mandate of public policy in Washington in favor of payment of wages earned. First, Kingston points to the legislature's enactment of the Wage Rebate Act, which forbids an employer from "[w]ilfully and with intent to deprive the employee of any part of his or her wages, [that] such employer is obligated to pay such employee by any statute, ordinance, or contract. RCW 49.52.050(2). Second, Kingston notes that the Washington Supreme Court has held that the Wage Rebate Act "establishes a strong policy in favor of ensuring the payment of the full amount of wages earned" which is further evidence by the inclusion of "both a criminal and civil penalty for the willful failure to pay wages earned." Morgan v. Kingen, 166 Wn.2d 526, 538 (2009), as corrected (Nov. 9, 2009). Both the Act and the Supreme Court's pronouncements identify a strong public policy in Washington in favor of ensuring employees are paid the wages earned. See Martin, 191 Wn.2d at 725 ("The question of what constitutes a clear mandate of public policy is one of law and can be established by prior

judicial decisions or constitutional, statutory, or regulatory provisions or schemes." (citation omitted)). This applies equally to commissions earned, which can constitute "wages" under Washington law. See Int'l Assoc. of Fire Fighters, Local 46 v. City of Everett, 146 Wn.2d 29, 35 (2002); Dkt. No. 27 at 10.

Kingston has identified evidence that he performed a whistleblowing act by reporting what he reasonably believed was IBM's misconduct in withholding Beard's full commission. As Kingston correctly notes, he need only show that he had a reasonable belief that Beard was owed the wages earned, not that Beard had a contractual right to them. See WPIC 330.51 (requiring proof that the plaintiff was "reporting what [he] [she] reasonably believed to be employer misconduct" (emphasis added)). Kingston has provided evidence that he reasonably believed withholding the full commission was employer misconduct because uncapped commission were owed to Beard as wages earned and as required by IBM policy. This supports a claim that his termination for reporting the misconduct contravened a clear mandate of public policy protecting wages earned. Additionally, Kingston has shown a dispute of material fact over whether his whistleblowing act was a significant factor in his termination. See Martin, 191 Wn.2d at 725. The Court finds that Kingston has met his initial burden to show a prima face claim of wrongful discharge.

In so concluding, the Court reconsiders its earlier decision that Kingston could not pursue this claim because Beard had no contractual rights to the commissions. (Dkt. No. 75 at 14-15); see RCW 49.52.050(2). The fact that Beard may not have an enforceable contractual right to the full commission or rights under the Wage Rebate Act is not dispositive. To prove his wrongful termination claim, Kingston need only show that he (Kingston) had a reasonable belief that capping Beard's commission was an improper withholding of wages earned (i.e., "employer

misconduct"). See Morgan, 166 Wn.2d at 538; WPIC 330.51. As the Washington Supreme Court has made clear, there is no "requirement that the plaintiff confirm the validity of his or her concerns before taking action." Rickman v. Premera Blue Cross, 184 Wn.2d 300, 312, (2015), as amended (Nov. 23, 2015); see also Thompson, 102 Wn.2d at 232 ("[C]ourts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme." (citation omitted and emphasis added)); Dicomes, 113 Wn.2d at 620 ("[W]e will consider whether the employer's conduct constituted either a violation of the letter or policy of the law, so long as the employee sought to further the public good, and not merely private or proprietary interests, in reporting the alleged wrongdoing." (emphasis added)).

But the Court is not convinced that Kingston's decision not to cap Donato's commission was a refusal to commit an illegal act. Unlike his whistleblowing claim, Kingston cannot rely on his reasonable belief about the alleged illegal conduct. And Kingston does not identify what specific law he would have violated if he capped Donato's commission. The Court will not allow Kingston to premise his wrongful discharge claim on this set of facts.

### 2. Remainder of Burden Shifting Analysis

While IBM has provided evidence of a non-pretextual basis for Kingston's termination, there remains a dispute of fact over whether Kingston's complaints about violations of public policy were a substantial factor in his termination. It is for the jury to determine whether the whistleblowing as to withholding Beard's commission was a substantial factor in Kingston's termination.

### CONCLUSION

Despite his procedural misstep, Kingston has demonstrated manifest error in the Court's Order on Summary Judgment. The Court reconsiders its decision and will permit Kingston to

1  pursue a wrongful termination claim based on his whistleblowing about withholding Beard's full
2  commission.
3      The clerk is ordered to provide copies of this order to all counsel.
4      Dated March 31, 2021.

*[signature]*

Marsha J. Pechman
United States District Judge

ORDER ON MOTION FOR RECONSIDERATION - 7