UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT KINGSTON, | CASE NO. C19-1488 MJP |
| Plaintiff, | COURT'S PRELIMINARY INSTRUCTIONS TO THE JURY |
| v. | |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | |
| Defendant. | |

Dated April 5, 2021.

Marsha J. Pechman
United States District Judge

**INSTRUCTION NO. 1**

**Duty of the Jury**

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set of instructions throughout the trial.  This set of instructions should kept safe with you during the trial and not shared.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**INSTRUCTION NO. 2**

**Neutral Statement**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This is a civil case brought by Scott Kingston against his former employer, International Business Machines Corp. (IBM). Mr. Kingston was a manager of a software sales team at IBM. In the summer of 2017, Mr. Kingston's team helped close a large deal with an IBM customer. One of the sales representatives on the deal, who is White, was paid a large commission. On September 30, 2017, another sales representative on Mr. Kingston's team, who is Black, closed a large deal on behalf of IBM. The Black sales representative's commissions on that deal were reduced by IBM.

On October 23, 2017, IBM launched an investigation into the commissions paid to the White sales representative. Mr. Kingston contends that before he was aware of the investigation, he complained internally about the two sales representatives being treated differently based upon their race. In April 2018, IBM terminated Mr. Kingston's employment for his role in the commissions paid on the first deal to the White sales representative.

Mr. Kingston brings claims four claims: (1) Retaliation in violation of the Washington Law Against Discrimination (Claim 1); (2) Wrongful termination in violation of public policy regarding race discrimination (Claim 2); (3) Wrongful termination in violation of public policy regarding the withholding of wages (Claim 3); and (4) Unjust enrichment (Claim 4).

IBM denies each of these claims and asserts that it did not terminate Mr. Kingston's employment for any impermissible reason.

**INSTRUCTION NO. 3**

**Conduct as Jurors**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**INSTRUCTION NO. 4**

**Outline of the Trial**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the virtual jury room to deliberate on your verdict.

## INSTRUCTION NO. 5

### Bench Conferences and Recesses

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Preliminary Jury Instructions

**INSTRUCTION NO. 6**

**Taking Notes**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the virtual jury room to decide the case. Do not let note-taking distract you. Throughout trial, your notes should be left so that no one reads them.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

**INSTRUCTION NO. 7**

**Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose

## INSTRUCTION NO. 8

### Direct and Circumstantial Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## INSTRUCTION NO. 9

### Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

 In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**INSTRUCTION NO. 10**

**Expert Witnesses**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**INSTRUCTION NO. 11**

**What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4. Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## INSTRUCTION NO. 12

### What is Evidence

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I may instruct you to accept as proved.

You may also hear testimony in the form of depositions.  This testimony is also evidence from which you are to decide the facts.  You should draw no inference from whether these individuals were or were not physically present in the court themselves.

**INSTRUCTION NO. 13**

**Burden of Proof – Preponderance**

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**INSTRUCTION NO. 14**

**Charts and Summaries**

Certain charts and summaries may be received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

## INSTRUCTION NO. 15

### Questions to Witnesses by Jurors

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question into the "chat" feature in the ZoomGov platform. Your questions should be directed to the judge. I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

## INSTRUCTION NO. 16

### Corporations

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

## INSTRUCTION NO. 17

### Corporation Acts through its Employees

Defendant IBM is a corporation. A corporation can act only through its officers and employees. Any act or omission of an officer or employee is the act or omission of the corporation.

## INSTRUCTION NO. 18

### Claim 1: Employment Discrimination – Retaliation

It is unlawful for an employer to retaliate against a person for opposing what the person reasonably believed to be discrimination on the basis of race.

To establish a claim of unlawful retaliation by IBM, Scott Kingston has the burden of proving both of the following propositions:

(1)     That Scott Kingston was opposing what he reasonably believed to be discrimination on the basis of race; and

(2)     That a substantial factor in IBM's decision to terminate Scott Kingston was his opposing what he reasonably believed to be discrimination.

If you find from your consideration of all the evidence that both of these propositions have been proved, then your verdict should be for Scott Kingston on this claim. On the other hand, if any one of these propositions has not been proved, your verdict should be for IBM on this claim.

Scott Kingston does not have to prove that his opposition was the only factor or the main factor in IBM's decision, nor does Scott Kingston have to prove that he would not have been terminated but for his opposition.

"Substantial factor" means a significant motivating factor in bringing about the employer's decision. "Substantial factor" does not mean the only factor or the main factor in the challenged act or decision.

The term "adverse" means unfavorable or disadvantageous. An employment action is adverse if it is harmful to the point that it would dissuade a reasonable employee from making a

complaint of discrimination. Whether a particular action is adverse is judged from the

perspective of a reasonable person in Scott Kingston's position.

**INSTRUCTION NO. 19**

**Claim 2: Wrongful Termination in Violation of Public Policy – Race Discrimination**

It is unlawful to terminate an employee in retaliation for refusing to commit an unlawful act or reporting employer misconduct.

To recover on his claim of wrongful termination in violation of public policy, Scott Kingston has the burden of proving that a substantial factor motivating IBM to terminate his employment was his refusing to commit an unlawful act or his reporting what he reasonably believed to be employer misconduct in the form of race discrimination.

"Substantial factor" means a significant motivating factor in bringing about the employer's decision. "Substantial factor" does not mean the only factor or the main factor in the challenged act or decision.

If you find from your consideration of all the evidence that Scott Kingston has not met this burden, then you must find for IBM on this claim.

If you find from your consideration of all the evidence that Scott Kingston has met this burden, then you must find for Scott Kingston on this claim.

**INSTRUCTION NO. 20**

**Claim 3: Wrongful Termination in Violation of Public Policy – Withholding Wages**

It is unlawful to terminate an employee in retaliation for refusing to commit an unlawful act or reporting employer misconduct.

To recover on his claim of wrongful termination in violation of public policy, Scott Kingston has the burden of proving that a substantial factor motivating IBM to terminate his employment was reporting what he reasonably believed to be employer misconduct in the form of withholding of earned wages.

"Substantial factor" means a significant motivating factor in bringing about the employer's decision. "Substantial factor" does not mean the only factor or the main factor in the challenged act or decision.

If you find from your consideration of all the evidence that Scott Kingston has not met this burden, then you must find for IBM on this claim.

If you find from your consideration of all the evidence that Scott Kingston has met this burden, then you must find for Scott Kingston on this claim.

**INSTRUCTION NO. 21**

**Claim 4: Unjust Enrichment**

With respect to his claim for unpaid commissions earned during the first quarter of 2018, you shall award Scott Kingston the reasonable value of the services he performed if he has proved by a preponderance of the evidence that

(1)     he performed the services for IBM's benefit and with IBM's knowledge, and

(2)     under the circumstances, IBM either knew or should have known that the services were performed and received with the expectation of payment of reasonable value.

**INSTRUCTION NO. 22**

**Measure of Damages: Economic and Non-Economic Damages**

It is the duty of the court to instruct you as to the measure of damages.  By instructing you on damages the court does not mean to suggest for which party your verdict should be rendered.

If your verdict is for Scott Kingston, you must determine the amount of money that will reasonably and fairly compensate Mr. Kingston for such damages as you find were proximately caused by the acts of IBM.

If you find for Scott Kingston, you should consider the following elements:

(1)      The reasonable value of lost past earnings and fringe benefits, from the date of the wrongful conduct to the date of trial;

(2)      The reasonable value of lost future earnings and fringe benefits; and

(3)      The emotional harm to Scott Kingston caused by IBM's wrongful conduct, including emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fair, anxiety, and/or anguish experienced and with reasonable probability to be experienced by Scott Kingston in the future.

The burden of proving damages rests with the party claiming them, and it is for you to determine, based upon the evidence, whether any particular element has been proved by a preponderance of the evidence.

Any award of damages must be based upon evidence and not upon speculation, guess, or conjecture. The law has not furnished us with any fixed standards by which to measure emotional distress. With reference to these matters, you must be governed by your own judgment, by the evidence in the case, and by these instructions.

**INSTRUCTION NO. 23**

**Measure of Damages: Future Lost Wages**

In calculating damages for future wage loss, you should determine the present cash value of salary, pension, and other fringe benefits from today until the time the plaintiff may reasonably be expected to retire, decreased by any projected future earnings. Any award for future economic damages must be for the present cash value of those damages.

"Present cash value" means the sum of money needed now which, if invested at a reasonable rate of return, would equal the amount of loss at the time in the future when the earnings or benefits would have been received.

The rate of interest to be applied in determining present cash value should be that rate which in your judgment is reasonable under all the circumstances. In this regard, you should take into consideration the prevailing rates of interest in the area that can reasonably be expected from safe investments that a person of ordinary prudence, but without particular financial experience or skill, can make in this locality.

In determining present cash value, you may also consider decreases in value of money that may be caused by future inflation.

Noneconomic damages such as emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, and/or anguish are not reduced to present cash value.

**INSTRUCTION NO. 24**

**Damages: Mortality Tables**

According to mortality tables, the average expectancy of life of a male aged 62 years is 19.93 years. This one factor is not controlling but should be considered in connection with all the other evidence bearing on the same question, such as that pertaining to the health, habits, and activity of the person whose life expectancy is in question.

**INSTRUCTION NO. 25**

**Measure of Damages: Restitution**

If you find for Scott Kingston on his claim for unpaid sales commissions from the first quarter of 2018, then in order to prevent unjust enrichment of IBM, Mr. Kingston is entitled to restitution or the restoration of any benefit conferred on IBM.

This means that Scott Kingston is entitled to the reasonable value to IBM of the services rendered to IBM.

**INSTRUCTION NO. 26**

**No Transcript**

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

## INSTRUCTION NO. 27

### Duty to Deliberate

Before you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Appendix A to Jury Instructions – Glossary of Terms**

| Term | Definition |
|---|---|
| ARB | **Allegation Review Board** – A board who reviews internal allegations and determines whether to conduct a formal investigation. |
| ESA | **Embedded Solutions Agreement** — An agreement where a technology company pays IBM to use some of IBM's technology in its products and sells those products under its own name to consumers or other businesses. |
| SAS | **SAS Institute, Inc.** — A technology company headquartered in Cary, North Carolina. |
| HCL | **HCL Technologies** — A technology company with its North American Headquarters in Sunnyvale, California. |
| IPL | **Incentive Plan Letter** — A document that IBM issues to each sales employee who is eligible to earn commissions. IBM issues IPLs twice per year, once which covers January through June and one which covers July through December. |
| IQP | **Individual Quota Plan** — One of several types of IBM sales plans where employees earn commissions through the sale of IBM products and/or services against a quota target. |
| FMS | **Field Management System** — IBM's internal computer system used to support the administering and paying of IBM sales incentives and commissions. |
| TOP | **Territory Optimization Program** — An internal software tool that IBM uses to assign customers to each sales employee who is on an IQP.  The information in TOP feeds into FMS. |
| Quota | The sales target given every six months to sales employees who are on an IQP. |
| BAU | **Business as Usual.** |
| First-Line Manager or FLM | An IBM sales employee's direct supervisor. |
| Second-Line Manager or SLM | An IBM first-line manager's direct supervisor. |

**Appendix B to Jury Instructions – Cast of Characters**

| NAME | TITLE | PROFILE |
|---|---|---|
| Cindy Alexander | CFO for IBM North America | |
| Jerome Beard | Sales Representative on ESA Team | |
| Dorothy Copeland | Third-line manager for the ESA Team in 2018 | |
| Nick Donato | Sales Representative on ESA Team | |
| Bob Finnecy | Second-line Manager on ESA Team | |

1

**Appendix B to Jury Instructions – Cast of Characters**

| | | | |
|---|---|---|---|
| Karla Johnson | Director, Sales Incentives for North America and Latin America |  | |
| Linda Kenny | HR Case Manager |  | |
| Scott Kingston | Second-line Manager on ESA Team |  | |
| Charles "Jeff" Larkin | Internal Audit Investigator |  | |
| Mike Lee | First-line Manager for ESA Technical Sellers |  | |

**Appendix B to Jury Instructions – Cast of Characters**

| | | |
|---|---|---|
| Stephen Leonard | General Manager of IBM North America |  |
| Maria Lipner | Vice President of Global Sales and Commissions |  |
| Russ Mandel | North American Consistency Reviewer |  |
| Lisa Mihalik | VP of Human Resources, North America Sales and Distribution and Global Industries |  |
| Dave Mitchell | Third-line Manager for ESA Team in 2017 |  |
| Greg Mount | First-line Manager on ESA Team | |

**Appendix B to Jury Instructions – Cast of Characters**

| | | |
|---|---|---|
| Rose Nunez | IBM Director, Channel Management |  |
| Bil Sherrin | ESA Technical Seller |  |
| John Teltsch | General Manager of IBM Partner Ecosystem |  |
| Andre Temidis | First-line Manager on ESA Team |  |