UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT KINGSTON,<br><br>               Plaintiff,<br><br>     v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>               Defendant. | CASE NO. C19-1488 MJP<br><br>ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR INTEREST AND OFFSET FOR TAXES |

      This matter comes before the Court on Plaintiff's Motion for Attorneys' Fees and Non-Taxable Costs (Dkt. No. 146) and Plaintiff's Motion for Prejudgment Interest, Offset for Taxes, and Post-Judgment Interest (Dkt. No. 142). Having reviewed the Motions, the Oppositions (Dkt. Nos. 156, 158), Replies (Dkt. No. 163, 166), and all supporting materials, the Court GRANTS in part Plaintiff's Motion for Attorneys' Fees and Non-Taxable Costs and GRANTS Plaintiff's Motion for Interest and an Offset for Taxes.

# BACKGROUND

On April 15, 2021, the jury returned a verdict in favor of Plaintiff Scott Kingston on all four of his claims against Defendant IBM. The jury found IBM liable for retaliation in violation of the Washington Law Against Discrimination, wrongful termination in violation of public policy regarding race discrimination and regarding the withholding of wages, and unjust enrichment regarding unpaid commissions. (Dkt. No. 140.) The jury awarded Kingston damages as follows: (1) $1,874,302 for past economic loss; (2) $3,097,642 for future economic loss; (3) $113,728 for unpaid sales commissions; and (4) $6,000,000 for emotional harm. (Id.) Kingston now seeks an award of attorneys' fees and nontaxable costs, as well as both pre- and post-judgment interest and a tax offset.

# ANALYSIS

## I. Motion for Attorneys' Fees and Nontaxable Expenses

**A.** **Motion for Attorneys' Fees Standard**

"The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838 (2011). To determine the fee award for a prevailing party, the Court begins by calculating a lodestar "by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see Ewing v. Glogowski, 198 Wn. App. 515, 521 (2017) (accord under Washington law). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435. And "[i]n these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id.

1  Under federal law, the Court determines the hourly rate by considering the "evidence produced by the parties, including fee rates of other attorneys in similar practices, awards in comparable cases, counsel's experience and reputation level, and the market rates, as well as two additional Kerr factors: the novelty/difficulty of the issues and the preclusion of other work." Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005). And under Washington law, if the "attorneys in question have an established rate for billing clients, that rate will likely be a reasonable rate." Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597 (1983). But "[t]he attorney's usual fee is not, however, conclusively a reasonable fee and other factors may necessitate an adjustment," such as "the level of skill required by the litigation, time limitations imposed on the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case." Id. And "[t]he reasonable hourly rate should be computed for each attorney, and each attorney's hourly rate may well vary with each type of work involved in the litigation." Id.

In deciding the number of hours "reasonably expended," the Court considers whether the time on matter that was "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. The requesting attorney "must provide reasonable documentation of the work performed" to enable this determination. Bowers, 100 Wn.2d at 597; Hensley, 461 U.S. at 433 (accord). "This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (i.e., senior partner, associate, etc.)." Bowers, 100 Wn.2d at 597.

**B.      Prevailing Party**

The Parties do not contest the fact that Kingston is the prevailing party on all of his claims. As such, Kingston is entitled to attorneys' fees and litigation expenses and costs under RCW 49.60.030(2) for his WLAD claim. And Kingston is similarly entitled to fees under RCW

49.48.030 for his unjust enrichment and wrongful discharge claims. See <u>Dautel v. Heritage Home Ctr., Inc.</u>, 89 Wn. App. 148, 152–53 (1997); <u>Hayes v. Trulock</u>, 51 Wn. App. 795, 806 (1988) (RCW 49.48.030 is broadly construed "to include back pay and front pay awards").

**C.      Lodestar Calculation**

Kingston requests approval of a lodestar of $1,337,553.75 in fees incurred through trial and an additional $129,693.75 in fees incurred through post-trial motions practice (a total of $1,467,247.50). The Court approves this request in part for the reasons set forth below.

**1.      Hourly Rates**

IBM questions only the $375/hour rate of Jeremy Williams. IBM argues that Williams' rate cannot be reasonable when compared to the hourly rate of $325 charged by Brittany Glass, another attorney for Kingston who graduated from law school the same year as Williams. IBM's criticism misses the mark. The undisputed record before the Court indicates that an hourly rate between $325 and $375 is reasonable for attorneys of Williams's and Glass's experience practicing within this District particularly in employment cases. (See Declaration of Daniel Johnson ¶¶ 13-14 (Dkt. No. 147); Declaration of Jamal Whitehead ¶¶ 15, 17 (Dkt. No. 148); Declaration of Joseph Shaeffer ¶¶ 15-16 (Dkt. No. 149).) While Williams and Glass graduated from law school the same year, that does not compel a finding that they must bill at the same hourly rate. Both Williams and Glass possess different resumes and experiences and worked on different aspects of this case to different degrees. Williams had substantial experience litigating employment issues specific to IBM, which gave him a unique understanding of the factual landscape of this case. (See Declaration of Matthew Lee ¶ 24 (Dkt. No. 151).) The two attorneys also work for different firms, who chose to set their rates differently but within a range that is reasonable in this District. Based on what the Court observed of Williams' performance, the

Court finds that the rate requested for Williams is reasonable and within the range acceptable in this District.

The Court also finds that the other attorneys' and paralegals' requested hourly rates are reasonable given the Court's observation of the quality and skill of counsel, the contingent nature of the representation, the difficulty of the issues, and the evidence presented that the rates fall within the market rates in the District for employment cases such as this. (See Johnson Decl. ¶¶ 9-14; Whitehead Decl. ¶¶ 13-17; Shaeffer Decl. ¶¶ 14-16.) The Court notes that IBM has otherwise not challenged any of the requested rates.

### 2. Hours Expended

IBM asks the Court to reduce the number of hours Kingston's counsel billed to this matter for a variety of reasons. The Court reviews each critique.

#### a. Litigation in New York

IBM asks the Court to reduce some of the hours Kingston's counsel billed when this case was initially filed in New York before he voluntarily dismissed it and refiled in this Court. IBM specifically asks for a reduction of $34,500 of the hours incurred to account for the fact that six of the seven claims that Kingston initially pursued in New York ultimately fell out the case. This includes four claims Kingston pursued under New York law and abandoned when he refiled in Washington, and two other claims that he pursued upon refiling that did not survive IBM's motion to dismiss. The Court is not convinced that this reduction makes sense. The claims Kingston filed in New York fell generally sought redress for his termination and unpaid commissions. Ultimately, he obtained relief and a substantial jury award on both fronts. So while Kingston voluntarily dismissed his claims based on New York law and had his contractual and statutory wage claims dismissed, he ultimately succeeded in obtaining all the relief he sought in

his initial complaint. The Court is not convinced that all of the time identified by IBM merits a reduction for the lack of success on individual claims that did not make it to trial, but for which Kingston ultimately obtained substantial monetary relief. See Hensley, 461 U.S. at 435.

But the Court does find some of the time Kingston spent trying to litigate the issue of venue in New York was both unsuccessful and unnecessary to the results achieved. See Hensley, 461 U.S. at 434. Having reviewed the billing records, the Court identifies 17.8 hours billed by Williams and 20.5 hours billed by Matthew Lee related to Kingston's opposition to the motion to dismiss which attacked venue, among other issues. The Court deducts from the lodestar half of this billed time (8.9 hours billed by Williams ($3,337.5) and 10.25 hours billed by Lee ($5,381.25)) to reflect the time that was unsuccessfully spent trying to keep the matter in New York. The Court otherwise makes no further reductions.

### b. Age Discrimination Claim

IBM asks the Court to reduce the amount of time Kingston's counsel billed related to his age discrimination claim that he dismissed on the eve of trial. The Court agrees that time billed exclusively to this claim should be deducted. IBM has identified only $1,435 billed to this claim. And IBM has otherwise failed to identify any other time billed that relates exclusively to the age discrimination claim, such as depositions, discovery, or motions. The Court is not convinced that any further reduction is appropriate. The facts and witnesses related to Kingston's age discrimination claim largely overlapped with those that took center stage at trial and which factored into the litigation. The Court will deduct the $1,435 billed from the lodestar specifically related to this claim, but nothing more.

c.  **Motion to Dismiss**

IBM asks the Court to reduce the hours Kingston's counsel spent opposing the motion to dismiss by 80% to reflect the fact that IBM obtained dismissal of 4 of 5 claims that it attacked. The Court finds no merit in this argument. While Kingston did lose out on his contractual and statutory wage claims, he preserved his equitable claims to unpaid wages and ultimately the jury awarded him the unpaid commissions. See Hensley, 461 U.S. at 435 ("[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.") The time spent on the motion to dismiss was not all in vain and it led to a narrowing and focusing of the issues—issues and claims on which Kingston succeeded. The Court will not reduce the hours IBM requests.

d.  **Clerical Tasks, Excessive Time, and Travel Time**

IBM asks for a reduction for time spent on clerical tasks and "erroneous entries." Kingston agrees as to the erroneous entries, but only as to some of the purportedly clerical tasks that IBM has identified. Based on the Court's review of the billing records, it finds a reduction of 31.5 hours billed to clerical tasks and the erroneous entries to be appropriate (for a lodestar reduction of $5,552.50). The Court remains unconvinced that the other time entries IBM has identified relate only to "clerical tasks," and makes no further reductions.

IBM also asks for a reduction of the hours spent by a paralegal at a deposition, and Kingston agrees with the request. The Court reduces the lodestar by $437.50.

IBM asks the Court to reduce the time billed by three attorneys at the deposition of Nick Donato. Although Williams took the deposition, both Toby Marshall and Lee appeared and billed time for the deposition. Particularly given Williams' experience, skill, and hourly rate, it

was not necessary to have three attorneys' present. The Court therefore deducts the hour Lee billed (a reduction of $525 from the lodestar).

IBM asks the Court to reduce $23,850 billed for travel. The Court largely disagrees with this request. As IBM admits, the billing records generally show that counsel was working on this matter during the time billed for travel. The Court finds only one entry for 7.4 hours that was billed by Lee which shows exclusively travel time without substantive case work. The Court reduces the lodestar by 7.4 hours (or $3,885) and makes no further reduction for the hours billed related to travel.

### e. Focus Groups

IBM asks the Court to reduce the hours billed by Kingston's counsel related to ten jury focus groups that Kingston convened. The Court agrees. While Kingston cites to other courts that have permitted recovery for this kind of work, the Court does not believe this time was well spent or necessary. Counsel for Kingston possess a great deal of experience and trial experience, which is reflected in their hourly rates. The Court does not believe that experienced counsel need to convene jury focus groups—much less ten focus groups—to be prepared for trial and convey their client's story. The Court finds that this time was neither reasonable nor necessary and that counsel's decision to spend this time and incur these costs will not be taxed to IBM. The Court therefore reduces the lodestar by the hours billed to the focus groups (178.65 hours totaling $70,023.75). The Court notes that it makes no reduction for time spent preparing to try this matter remotely via Zoom.

### 3. Time Billed to Post-Trial Motions

Kingston seeks an award for the time his counsel spent preparing the Motion for Attorneys' Fees, the Motion for Interest and Tax Offset, and opposing IBM's post-trial motion.

IBM does not oppose these requests, and the Court finds the time billed to be reasonable and necessary. Having reviewed the records presented, the Court finds the lodestar should include an additional $129,693.75 in fees for this work.

* * *

Including the time spent on the post-trial motions and the reductions identified above (which total $90,577.50), the Court finds that the total lodestar in this case is $1,376,670.00.

**C.     Lodestar Multiplier**

Kingston ask the Court to apply a multiplier of 1.5 to the lodestar to reflect the contingent nature of the success and the quality of work performed. IBM counters, arguing that this was merely a typical retaliation and employment case that posed no more risk than any similar case and that the contingency risk and quality of counsel is already reflected in the hourly rates. The Court finds that a multiplier here is appropriate.

A lodestar multiplier is governed here by Washington law. See Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 809 (9th Cir. 2018). "After the lodestar has been calculated, the court may consider adjusting the award to reflect additional factors." Chuong Van Pham v. City of Seattle, Seattle City Light, 159 Wn.2d 527, 541 (2007). Kingston bears the burden of justifying the upward adjustment. See id. Adjustments are made "under two broad categories: the contingent nature of success, and the quality of work performed." Bowers, 100 Wn.2d at 598. "The contingency adjustment is based on the notion that attorneys generally will not take high risk contingency cases, for which they risk no recovery at all for their services, unless they can receive a premium for taking that risk." Van Pham, 159 Wn.2d at 541. "[T]o the extent, if any, that the hourly rate underlying the lodestar fee comprehends an allowance for the contingent nature of the availability of fees, no further adjustment duplicating that allowance should be made." Bowers, 100 Wn.2d at 599. But "[w]hile we presume that the lodestar represents a

reasonable fee, occasionally a risk multiplier will be warranted because the lodestar figure does not adequately account for the high risk nature of a case." Van Pham, 159 Wn.2d at 542. The Court must thus assess the likelihood of success at the outset of the litigation. Bowers, 100 Wn.2d at 598. And an adjustment for the quality of work performed "is an extremely limited basis for adjustment, because in virtually every case the quality of work will be reflected in the reasonable hourly rate." Id. at 599.

The Court here finds a multiplier to be appropriate. Looking at this case from its outset, Kingston's counsel took on a high-risk case where it would be difficult to prove that Kingston's termination was pretextual for acting as a whistleblower against racial discrimination and illegal wage withholding. This fact is tempered somewhat by the fact that Kingston was an attractive client—a high wage-earner who is articulate and knowledgeable. On balance, while some of this risk is reflected in the hourly rates of counsel that the Court has approved, not all of it is. And while the quality of counsel is largely reflected in the hourly rates, the exceptional result here merits some additional consideration. All three local attorneys providing declarations aver that the jury's award in this case was the largest in any retaliation, discrimination or wrongful termination case in the District. (Whitehead Decl. ¶ 18; Johnson Decl. ¶ 15; Shaeffer Decl. ¶ 13.) This success reflects the quality of counsel who succeeded in proving claims of retaliation largely with circumstantial evidence. Having considered these factors, the Court finds a multiplier of 1.1 appropriately reflects the high-risk nature of this case and counsel's quality of work.

Applying the multiplier, the Court awards $1,514,337.00 in attorneys' fees.

**D. Litigation Expenses**

The WLAD permits a prevailing party to recover the nontaxable costs of litigation. Blair v. Wash. State Univ., 108 Wn.2d 558, 573 (1987); RCW 49.60.030(2). Here, the Court finds Kingston is entitled to recover all of the expenses he has identified except those related to the jury focus groups for the reasons set forth above. The Court therefore awards $40,124.19 in nontaxable litigation expenses, which includes costs related to the post-trial motions ($236.25) and which deducts $39,900 in expenses related to the focus groups. The Court notes that it makes no reduction for expenses incurred to try this matter remotely via Zoom.

## II. Motion for Interest and Offset of Taxes

**A. Prejudgment Interest**

State law governs the awards of prejudgment interest in this diversity action, so the Court considers Washington law as to prejudgment interest. See Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co., 513 F.3d 949, 961 (9th Cir. 2008). The first consideration is to determine what claims are liquidated, because prejudgment interest can only be applied to liquidated claims. See Hansen v. Rothaus, 107 Wn.2d 468, 473 (1986). Here, the parties do not dispute that Kingston's award for backpay and unpaid commissions are liquidated. The second consideration is the interest rate to be applied. Washington does not have a statute that sets a rate for prejudgment interest. Instead, Washington courts look to the statute governing post-judgment interest, RCW 4.56.110, to set the applicable rate. See Unigard Ins. Co. v. Mut. of Enumclaw Ins. Co., 160 Wn. App. 912, 925 (2011) (prejudgment interest is allowed at the rates set by RCW 4.56.110). For WLAD claims, which sound in tort, courts use the interest rate determined by RCW 4.56.110(3). Washington State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 225 (2013). RCW 4.56.110(3)(b) provides that "judgments founded on the tortious

conduct of individuals or other entities … shall bear interest from the date of entry at two percentage points above the prime rate, as published by the board of governors of the federal reserve system on the first business day of the calendar month immediately preceding the date of entry."

Kingston asks for an award of prejudgment interest on his backpay and unpaid commissions at a rate of 2 percentage points over the prime rate to be applied to the jury's award of $1,710,018. That amount is found by adding together the unpaid wages of $1,682,334, employer-paid health benefits of $27,684, and unpaid commissions of $113,728. Kingston relies on Erick West, an economist, to calculate the prejudgment interest. West calculates the prejudgment interest for each month before judgment by using the applicable monthly prime rate plus 2 percentage points. (See Declaration of Erick West ¶¶ 8-15 (Dkt. No. 143); Reply Decl. of West ¶¶ 4-6 (Dkt. No. 164)). This results in a fluctuating interest rate. (See West Decl. ¶ 14.) Applying this fluctuating rate, West has determined that Kingston is entitled to a prejudgment interest award of $199,966.52.

IBM challenges Kingston's use of a fluctuating interest rate. Kingston responds by arguing that use of a fluctuating rate is permitted and encouraged under federal law and also consistent with state law. The Court agrees with Kingston. Considering federal claims, the Ninth Circuit has concluded that "[t]he most accurate way to fully compensate a plaintiff would be to award prejudgment interest from the date of injury, but at a fluctuating rate." Saavedra v. Korean Air Lines Co., 93 F.3d 547, 555 (9th Cir. 1996). This reasoning applies equally to Kingston's state law claims because the purpose of prejudgment interest under both federal and Washington law claims is to fully compensate the plaintiff. See id.; Hansen, 107 Wn.2d at 473. Here, the

application of a fluctuating interest rate, computed monthly is the most accurate and appropriate way to fully compensate Kingston.

IBM also argues that West has improperly compounded the interest calculations. But as West makes clear, he has not compounded the interest (i.e., added the accrued interest to the principal balance). (See Reply West Decl. ¶ 6.) West calculated prejudgment interest on a simple basis. The Court finds no flaw in this methodology.

The Court therefore awards $199,966.52 in prejudgment interest.

**B.    Tax Offset**

Kingston requests $1,117,508 to offset the increased federal taxes he faces from to the jury's award for past and future economic loss and unpaid commissions.

The parties first dispute whether the award of a tax "gross up" or offset is discretionary. This requires the Court to assess the decision in Blaney v. Int'l Assoc. of Machinists and Aerospace Workers, Dist. No. 160, 151 Wn.2d 203 (2004). The opinion set out to answer the question of whether success on a WLAD claim "entitles [the] prevailing plaintiffs to an offset for the additional federal income tax consequences." Id. at 215. The Court concluded:

> Because WLAD incorporates remedies authorized by the federal civil rights act and that statute has been interpreted to provide the equitable remedy of offsetting additional federal income tax consequences of damage awards, we hold that WLAD allows offsets for additional federal income tax consequences.

Id. at 215-16. As this section makes clear, the WLAD merely "allows offsets" but does not require them. And because the offset is equitable in nature, it is within the Court's discretion to award the offset, if any. Ultimately, Kingston cites to no binding authority that a tax offset is mandatory, and the Court is not convinced that this view could be squared with the decision in Blaney, which merely spoke of an allowance for tax offsets, not a mandatory award.

The Court finds that a tax offset is appropriate in this matter. It is true that Kingston would have faced tax liability had IBM paid him the wages, benefits, and commissions that the jury awarded him. But due to IBM's conduct which the jury found improper under Washington law, Kingston was forced to litigate this matter to obtain these unpaid sums. Given the jury's verdict, the Court finds the equities favor IBM footing the bill for the substantial tax liability that Kingston faces from his successful jury verdict. The Court therefore awards the tax offset of $1,117,508—as that amount is calculated by West. (See West Decl. ¶¶ 16-26.)

**C.     Post-judgment Interest**

Kingston asks for post-judgment interest to be awarded on his damages, as well as any prejudgment interest, attorneys' fees and costs, and that the post-judgment interest be calculated at a rate of .06%, computed daily and compounded annually. IBM agrees with this proposition. The Court therefore awards post-judgment interest on the awarded damages, prejudgment interest, and attorneys' fees and costs, to be calculated at a rate of .06% computed daily and compounded annually.

**CONCLUSION**

The jury's verdict in favor of Kingston was substantial, and his attorneys who pursued and obtained this result are entitled to recover their fees and nontaxable expenses, including a multiplier of the lodestar. The Court therefore GRANTS in part the Motion for Attorneys' Fees and awards $1,514,337.00 in attorneys' fees and $40,124.19 in nontaxable litigation expenses.

Kingston is also entitled to recover pre- and post-judgment interest, as well as a tax offset. The Court GRANTS the Motion for Interest and Tax Offset and Court awards prejudgment interest of $199,966.52, a tax offset of $1,117,508, and post-judgment interest on

the awarded damages, prejudgment interest, and attorneys' fees and costs, to be calculated at a rate of .06% computed daily and compounded annually.

The clerk is ordered to provide copies of this order to all counsel.

Dated June 29, 2021.

Marsha J. Pechman
United States Senior District Judge