UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT KINGSTON,<br><br>               Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>               Defendant. | CASE NO. C19-1488 MJP<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR |

      This matter comes before Defendant's Motion for Judgment as Matter of Law, a New Trial, or Remittitur. (Dkt. No. 161.) Having reviewed the Motion, the Opposition (Dkt. No. 186), the Reply (Dkt. No. 189), and all supporting materials, the Court DENIES the Motion.

**BACKGROUND**

      On April 15, 2021, the jury returned a verdict in favor of Plaintiff Scott Kingston on all four of his claims against Defendant IBM. The jury found IBM liable for retaliation in violation of the Washington Law Against Discrimination, wrongful termination in violation of public policy regarding race discrimination and regarding the withholding of wages, and unjust

enrichment regarding unpaid commissions. (Dkt. No. 140.) The jury awarded Kingston damages as follows: (1) $1,874,302 for past economic loss; (2) $3,097,642 for future economic loss; (3) $113,728 for unpaid sales commissions; and (4) $6,000,000 for emotional harm. (Id.) IBM asks for judgment as a matter of law on Kingston's retaliation and wrongful termination claims, or, alternative, a new trial or remittitur.

## ANALYSIS

**A.   Legal Standards**

Under Rule 50 a party may renew a motion of for judgment as a matter law that was not granted by the Court. Such a motion should be granted only "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). "In considering a Rule 50(b)(3) motion for judgment as a matter of law, the district court must uphold the jury's award if there was any 'legally sufficient basis' to support it." Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd, 762 F.3d 829, 842 (9th Cir. 2014) (quoting Costa v. Desert Palace, Inc., 299 F.3d 838, 859 (9th Cir. 2002)). "In making that determination, the district court considers all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party" and "the court may not make any credibility determinations or reweigh the evidence." Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

Under Rule 59 "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," so the Court is instead "bound by those grounds that

have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)). "The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 510 n.15 (9th Cir. 2000). "Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict." Experience Hendrix, 762 F.3d at 842. "[T]he district court can weigh the evidence and assess the credibility of the witnesses" and "may sua sponte raise its own concerns about the damages verdict." Id. (citation omitted). "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." Id. (citing Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990)).

**B.    Judgment as a Matter of Law**

IBM asks for judgment as a matter of law on Kingston's retaliation and wrongful termination claims, arguing that there was inadequate evidence that a substantial factor in Kingston's termination was his opposition to racial discrimination because none of the people who recommended his termination knew about this opposition. The Court is not convinced that judgment as a matter of law is appropriate construing the record at trial in Kingston's favor.

The Parties agree that the Court's final jury instructions for the retaliation and wrongful termination claims correctly required Kingston to show that a substantial factor in his

termination was his opposition to racial discrimination or reporting what he reasonably believed was racial discrimination or the unlawful withholding of wages. (Final Jury Instructions Nos. 15-17 (Dkt. No. 133).) "Substantial factor" means "a significant motivating factor in bringing about the employer's decision." (Id.) "Substantial factor" does not mean the only factor or the main factor in the challenged act or decision. (Id.) As IBM points out, "an employer cannot retaliate against an employee for an action of which the employer is unaware." Cornwell v. Microsoft Corp., 192 Wn.2d 403, 414 (2018). An employee must instead demonstrate that the employer had actual knowledge of the protected activity or that the employer knew or suspected that an employee had engaged in the protected activity. Id. at 413, 421.

IBM focuses on the five people involved in the decision to fire Kingston and argues that none of them was shown to have known anything about Kingston's opposition to the treatment of Jerome Beard. The five people were Linda Kenny (who made the initial recommendation), Russ Mandel (who reviewed Kenny's recommendation for "consistency"), and the three members of the "Review Board"—Scott Ferrauiola, Lisa Mihalik, and Cindy Alexander. IBM points out that Kenny knew nothing about Kingston's complaints about Beard's treatment and Kingston cites to no evidence she did. There is also no direct evidence cited by Kingston regarding Mandel's, Ferrauiola's, or Mihalik's knowledge. The primary dispute turns on what Cindy Alexander knew of Kingston's complaints about how Beard was treated. On this, Kingston cites to a variety of circumstantial evidence that supports the jury's determination. This includes Kingston's complaints to Rose Nunez about how Beard was treated on the HCL deal, which were communicated via email Brian Mulada and ultimately to Cindy Alexander. The Parties dispute whether the email shows Kingston opposing discrimination. The fact that the Parties reasonably dispute the meaning and import of the email suffices to show that the jury was

entitled to conclude the emails showed Kingston opposing the mistreatment of Beard. Kingston also points out that Alexander later forwarded the email to Kenny and the investigator, Jeff Larkin, at the time the Review Board was considering Kingston's termination. While IBM is correct to point out that Alexander forwarded the email after Kenny had made her recommendation for termination, the jury could have considered this as evidence that Alexander and the Review Board were looking at Kingston's complaints about Beard's treatment in making their termination decision. And Kingston buttresses this circumstantial evidence by noting the evidence that IBM's stated reason for his termination was pretextual—that he did not violate the policies that IBM cited as the basis for his termination. Construed in the light favorable to Kingston, the Court finds this sufficient evidence to sustain the jury's verdict.

Though not necessary to reach to rule on IBM's motion, the Court considers Kingston's argument that he made his opposition to discrimination known to Dorothy Copeland and that she was a decision maker in his termination. But Copeland was only the messenger and Kingston did not elicit any testimony or provide any evidence that she had a role in the termination decision. Kingston claims that Copeland was a de facto decision maker, citing Mackey v. Home Depot USA, Inc., 12 Wn. App. 2d 557 (2020), review denied, 195 Wn.2d 1031 (2020). Kingston's reliance on Mackey is misplaced. In Mackey there was a dispute of fact as to who the ultimate decision-maker was, and at summary judgment, it could not be concluded that the person who relayed the termination message was not also the decision mater. Here, Kingston fails to show that Copeland had any involvement in the termination decision and instead suggests the jury could infer her participation. But Kingston does not explain why that inference is appropriate— even construing evidence in his favor—and does not explain why that inference is appropriate

given absence of any evidence linking Copeland to the Review Board members, Kenny, or Mandel.

Based on the Court's review of the evidence it finds no basis to grant IBM's request for judgment as a matter of law and DENIES the Motion on this issue.

C.  **Motion for New Trial**

IBM seeks a new trial under Rule 59 for three reasons: (1) the jury could only have found that Kingston was treated unfairly, not unlawfully; (2) Instruction No. 17 impermissibly allowed the jury to find liability merely where the wage withhold was unfair, not unlawful; and (3) the jury instructions did not instruct on Kingston's "at-will" status. The Court is unconvinced that any of these arguments justifies a new trial.

First, the jury was presented evidence that Kingston acted as a whistleblower with regard to his belief of how Beard was treated on account of Beard's race and evidence that IBM management knew of Kingston's opposition. While the evidence was circumstantial as to the decision-makers' knowledge of this opposition, Kingston supported this by presenting evidence that the stated reasons for his termination were pretextual and that he did not actually violate the IBM policies he was accused of violating. IBM has not demonstrated that the jury's decision was "contrary to the clear weight of the evidence" and that a new trial is necessary to prevent a miscarriage of justice. Passantino, 212 F.3d at 510 n.15.

Second, IBM has not demonstrated any flaw in Final Instruction No. 17 warranting a new trial. Final Instruction No. 17 instructed the jury as to Kingston's claim for "Wrongful Termination in Violation of Public Policy – Wage Withholding." The first flaw in IBM's argument is that it failed to object to the instruction when the Court took exceptions to the final instructions. IBM claims the Court somehow allowed IBM to preserve its objections the day

before the Court took formal objections. IBM relies on the following statement the Court made the day before the final instructions were given and exceptions taken:

> Jury instructions. I'm not asking you to take your formal exceptions at this time. I'm asking if you have had a chance to take a look and are there problems with the instructions. I do understand that the defense will want to preserve their objection to the instruction that talks about the wages. So talk to me, Mr. Taylor, are there other problems with these instructions you want to bring to my attention or ask me to change?

(Dkt. No. 183 at 1351:6-13.) While the Court noted IBM "will want to preserve their objections," the Court stated clearly that it was not taking formal exceptions. When that time came the following day, IBM's counsel failed to make any objection on the record. Counsel for IBM only objected to the lack of an at-will instruction, stating that "[o]ther than that, we accept the instructions." (Dkt. No. 184 at 1372:13-21.)

Having failed to preserve its objections, IBM must meet the high threshold to show plain error. See Fed. R. Civ. P. 51(c) & (d). Plain error imposes "an even high[er] threshold for granting a new trial." See Settlegoode v. Portland Pub. Schs., 371 F.3d 503, 517 (9th Cir. 2004) (citation and quotation omitted). "Plain error review requires: (1) an error; (2) that the error be plain or obvious; (3) that the error have been prejudicial or affect substantial rights; and (4) that review be necessary to prevent a miscarriage of justice." Id.

IBM argues that there is plain error in Final Instruction No. 17 because it allowed the jury to find liability without Kingston having to show that he believed the employer had engaged in illegal conduct and that the instruction deviated from the Washington Pattern Jury Instructions. In relevant part, the Court's instruction stated:

> To recover on his claim of wrongful termination in violation of public policy, Scott Kingston has the burden of proving that a substantial factor motivating IBM to terminate his employment was reporting what he reasonably believed to be employer misconduct in the form of withholding of earned wages.

(Dkt. No. 133 at 20.) The Pattern Instructions state:

> To recover on [his] [her] claim of wrongful termination in violation of public policy, (name of plaintiff) has the burden of proving that a substantial factor motivating the employer to terminate [his] [her] employment was [his] [her] . . . [reporting what [he] [she] reasonably believed to be employer misconduct].

6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 330.51 (7th ed. 2019). A comparison shows that the Court's instruction tracked the Pattern Instructions. The Court's instruction required the jury to find that Kingston reasonably believed the withholding of wages was employer misconduct—not just an unfair conduct. This tracks the requirements of the Pattern Instruction and the Court finds no plain error.

Third, the lack of an "at-will" instruction was not prejudicial. As IBM admits, this instruction need not be given in cases involving employment terminations. (Dkt. No. 187 at 8.) The jury instructions set out Kingston's burden to prove that his termination was wrongful in violation of public policy, and IBM was permitted to and did provide evidence as to why the termination his at-will employment complied with the law. As IBM itself notes, "wrongful termination is 'a narrow exception to the at-will doctrine' and has 'generally been limited to four scenarios,' including, 'where employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing.'" (Mot. at 8 (quoting Martin v. Gonzaga Univ., 425 P.3d 837, 842–43 (Wash. 2018)).) The jury here was properly instructed to hold Kingston to his burden of proof as to all elements of his wrongful termination claim and the lack of an "at will" instruction did not lessen Kingston's burden of proof. The Court finds no basis for a new trial.

**D.	Remittitur**

In reviewing a damages award for excessiveness, a district court, sitting in diversity, applies state law for measuring excessiveness. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 429–31, 434–36 (1996). In Washington, the Court may order a new trial if it "find[s] the damages awarded by a jury to be so excessive or inadequate as unmistakably to indicate that the

amount thereof must have been the result of passion or prejudice." RCW 4.76.030. But in reaching any decision, the Court must "strongly presume the jury's verdict is correct." Bunch v. King Cty. Dep't of Youth Servs., 155 Wn.2d 165, 179 (2005). This is because "[t]he jury is given the constitutional role to determine questions of fact, and the amount of damages is a question of fact." Id. "'The jury's role in determining noneconomic damages is perhaps even more essential." Id. (quoting Sofie v. Fibreboard Corp., 112 Wn.2d 636, 646 (1989)). "A new trial should only be granted where the flavor of misconduct . . . sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." Settlegoode, 371 F.3d at 516-17 (quotation and citation omitted).

IBM makes three arguments in favor of remittitur, none of which has merit.

First, IBM argues that Kingston only showed "garden variety" emotional damages that did not warrant the jury's award. But the jury heard compelling testimony from Kingston and his wife about the emotional toll that his termination has caused. Kingston's wife testified that after Kingston was fired, she feared he would engage in self harm and that the stress of his termination was triggering a health crisis. The jury also heard evidence of Kingston's extensive but fruitless efforts to find a new job, and the toll that the repeated rejection took on him as a 62 year-old. The jury also heard Kingston testify compellingly about his self-doubt as to whether he had done the right thing in speaking out. And as Kingston notes, the jury did not award as much as his counsel requested in closing, which suggests the jury carefully weighed the evidence in determining the amount of noneconomic damages. For its part, IBM failed to provide the jury with any number that it should have considered in determining the noneconomic damages despite acknowledging that Kingston had been emotionally impacted by the termination. While the award was large, the Court finds no principled basis on which to remit it.

1     Second, IBM argues that counsel improperly suggested that its award could "send a
2 message" to IBM and was effectively a request for punitive damages. The argument lacks merit.
3 The first problem with IBM's argument is that it failed to object to the remarks at the time they
4 were made and it must therefore show plain error. The reasons for the plain error standard attach
5 precisely to the issue before the Court because a party's failure to object at the time deprives the
6 court of the ability to admonish counsel or offer a curative instruction and "encourages [the party
7 seeking a new trial] to sit silent in the face of claimed error." See Settlegoode, 371 F.3d at 517
8 (citation and quotation omitted). Here, there is insufficient evidence of plain error that the
9 prejudicial effect of these comments permeated the jury's verdict such that the Court should find
10 a miscarriage of justice. Counsel's statements were likely inappropriate, but they were not so
11 extreme or pervasive as to have tainted the jury. They were a small part of the closing and could
12 have been easily addressed with an instruction had IBM objected at the time. See Collins v.
13 Clark Cnty. Fire Dist., 155 Wn. App. 48, 94-95 (2010) (finding improper remarks about the jury
14 sending a message about "future" sexual harassment was not "so prejudicial that a timely
15 instruction could not have cured any prejudicial effect"). The Court rejects this argument.

    Third, the Court is not convinced that the jury's award should be remitted as the product
of passion and prejudice. To merit such relief, IBM has to show the award was "so excessive as
to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and
. . . flagrantly outrageous and extravagant . . . ." Bunch, 155 Wn.2d at 179. "Before passion or
prejudice can justify reduction of a jury verdict, it must be of such manifest clarity as to make it
unmistakable." Id. at 183 (citation omitted). The jury's award was substantial. But it was not so
excessive as to be beyond all measure, outrageous, or extravagant. The jury awarded less than

Kingston requested, and IBM failed to provide the jury any dollar figure by which it could have benchmarked its award. The Court rejects IBM's request.

## CONCLUSION

The Court finds no basis on which to grant judgment as a matter of law, a new trial, or remittitur. IBM was given a fair opportunity to present its case at trial, and it has failed to show any basis to set aside or readjust the jury's award. The Court therefore DENIES the Motion in full.

The clerk is ordered to provide copies of this order to all counsel.

Dated June 29, 2021.

Marsha J. Pechman
United States Senior District Judge